24369. WHITMER COMPANY *v.* SHEFFIELD *et al.*

DECIDED AUGUST 5, 1935.

N. L. *Stapleton,* for plaintiff. P. Z. *Geer,* for defendants.

JENKINS, P. J. Irrespective of whether the defendants in this case were sureties or guarantors (see, in this connection, *Etheridge* v. *Rawleigh Co.,* 29 *Ga. App.* 698, 116 S. E. 903; *Rawleigh Co.* v. *Salter,* 31 *Ga. App.* 329, 120 S. E. 679), they were released from liability, since what they agreed to do was to guarantee the honest and faithful performance on the part of their principal of a written contract, whereby the principal was "to purchase [of the plain-

tiff] on credit and at wholesale prices to *sell* again to customers medicines, extracts," and other articles, and to remit "in cash each week to said company not less than fifty per cent. of the cash receipts from his business until his account [was] balanced;" and since, without their knowledge or consent, there was in two vital respects a novation of the contract which they had agreed to guarantee. In response to an inquiry from the principal to the plaintiff with reference to the right of the principal to sell goods with a "guarantee of satisfaction" and "on approval," the plaintiff specifically authorized and consented to the selling of goods, furnished the principal on the defendants' credit, under a partial and conditional guaranty to customers by the principal; and it also authorized and consented to the putting out of goods, thus furnished to the principal, merely on approval without any obligation on the part of the customer to pay for the same. A paragraph of a letter from the plaintiff to the principal, admitted in evidence, is as follows: "You are asking about the guarantee of satisfaction on the medicines. Now it is entirely up to the dealer whether he wants to sell on approval or not, as you are in business for yourself, this is your own decision to make. The Company guarantees the medicines to give satisfaction like this: upon your customers using one fourth the contents of a bottle or package and not being satisfied with the results, they can hand this back to you, and you can make this right with them, then you may send the return products to us, and we will credit your account with those products at the current wholesale price. That's fair enough, isn't it? But you may sell on approval where you care to. I suggest that you only do that in homes where the people are good and reliable and where they pay their bills. As I have stated before, this is entirely up to you, as you are in business for yourself." Neither of these procedures was embraced in or contemplated by the terms of the contract the performance of which the defendants guaranteed. All that they agreed to do was to guarantee that the principal would pay for the goods purchased from the plaintiff to sell again to the principal's customers. They might reasonably have been unwilling to assume the risk of the principal's going about and collecting partly-used bottles and packages of products, left on approval, in order to receive credit upon return to the plaintiff, instead of collecting the purchase-price on goods sold, in order to make the remittances to the

plaintiff as required by the contract; and. they might reasonably have been still more unwilling to make an unlimited guaranty for the payment of goods furnished by the plaintiff on their credit, where the plaintiff authorized the principal to put out unlimited quantities of goods on approval without any binding obligation for payment by the customer. The petition shows that the principal is insolvent. Permitting the principal to flood the territory by putting out goods on the easy method of mere approval would manifestly tend to enormously increase the plaintiff's business, but would constitute a misuse of the defendant's credit, since the contract which they guaranteed was restricted to sales, and did not contemplate such high-powered methods.

The recent case of *Rich* v. *Rawleigh Co.*, 47 *Ga. App.* 571 (171 S. E. 228), although not referred to in the briefs, should perhaps be distinguished. The contract guaranteed in that case provided that it could not be modified except in writing signed by both the principal and the plaintiff with the latter's corporate seal affixed. What amounted to a suggested change by the plaintiff in that case was a suggestion only and purely unilateral. In the instant case, the contract contained no such provision as to modification, and the novation was effected by the meeting of the minds of the contracting parties through correspondence, all without the knowledge or consent of the defendants. As was intimated in the *Rich* case, the defendants might have been there discharged, even in the absence of a novation, if it had been shown that the losses were incurred by transactions made outside of and beyond the contract, but such facts were not shown.

The court did not err in overruling the demurrer to the defendants' answer as amended, or in refusing a new trial to the plaintiff. *Judgment affirmed. Sutton, J., concurs. Stephens, J., dissents.*