DECIDED FEBRUARY 23, 1940.

*Robert T. Efurd, Mose S. Hayes,* for plaintiff.
*Gues, Peters & Spence,* for defendants.

FELTON, J. Seaboard Loan Corporation sued H. C. McCall, R. C. McCall Jr., G. A. Smith, T. D. Gibbs, and H. B. McCall for a balance due on a promissory note signed by Mrs. Myrtle McCall and the above-named defendants. The note was for the purchase-price of 200 two per cent. investment certificates. Each of the defendants pleaded that the note was given in connection with a note given by Mrs. McCall to secure a loan of $1000, to secure which the note sued on was put up as collateral, that the plaintiff loan corporation agreed to procure insurance on the maker's life to an extent that in the event of the death of the maker the insurance would completely liquidate the loan; that it failed to have the life of Mrs. McCall insured; that Mrs. McCall died and as a result of such failure to procure insurance on her life there was no liability on any indorser, or surety, as each alleged himself to be. The evidence showed that Mr. H. C. McCall applied for the loan. Each of the defendants signed a financial statement showing that he had signed a note of H. C. McCall for $1000. At the bottom of each financial statement was the following: "$20 insures this loan and relieves comakers of liability in the event of death. Do you want this protection?" Each of the defendants, with the exception of H. C. McCall and H. B. McCall, answered the question "Yes." H. C. McCall did not sign the same form, and H. B. McCall left the question unanswered.

The corporation refused to make the loan to H. C. McCall because it discovered that the personal property to be pledged to secure the note for the purchase of the certificates was owned by his wife, Mrs. Myrtle McCall. It then had Mrs. McCall sign the application. Mrs. McCall and the other defendants had already signed the note made by H. C. McCall, and after it was determined not to make the loan to H. C. McCall the corporation had

Mrs. McCall sign the note again above the other signatures. The indorsers were notified of the change, and each agreed to remain on the note with Mrs. McCall as borrower. The certificates were issued to Mrs. McCall as owner. The checks for the money borrowed were issued to Mrs. McCall, and she paid the corporation $20 premium for life insurance for the purpose of having the loan "insured." Several of the indorsers got the benefit of the money borrowed, but they got it through and from Mrs. McCall and not from the corporation. The corporation had procured insurance on H. C. McCall under a master policy, but not on Mrs. McCall. Mrs. McCall died and the corporation sued H. C. McCall as maker and the other indorsers. The jury found for the defendants, and to the order overruling the motion for new trial exception is taken.

1. The case was tried on the theory that the indorsers signed on condition that the loan be insured, meaning that the maker was to be insured, and that since the condition precedent was not fulfilled they never became parties and were not liable. The evidence does not authorize this finding. It does, however, *demand* the finding that the loan was made to Mrs. McCall as borrower, and that the corporation agreed with her to procure insurance on her life for enough to discharge the loan in the event of her death, in consideration of the payment of the premium by her which was actually paid. That she was the principal on the note, and the sole principal, is foreclosed by the fact that the certificates for which the note sued on was given were issued to her alone. The signatures of the indorsers, even if placed on the notes before the actual agreement to procure the insurance was made, are to be considered in the circumstances as simultaneous with the agreement to procure insurance and a part of the same transaction. In this view the failure of the corporation to procure the insurance increased the risk of the sureties, and they were relieved, not because the corporation breached an agreement with them, but because it breached an agreement with the maker whereby their risk was increased, especially in view of the death of Mrs. McCall. Whether the same result would have accrued if she had lived is a question not before us for decision. The subject of collateral security is not embraced in the negotiable instruments law, and is therefore covered by Code, § 14-106, placing the question under the law merchant and the common law. Any act of the creditor which injures a surety

or increases the risk discharges him. Code, § 103-203. When a creditor breaches his contract with the principal and varies the sureties' risk he discharges the sureties. 4 Williston on Contracts, 3559, § 1243. In Watts v. Shuttleworth, 5 H. &. N. 235, 7 H. & N. 353, it was held that a surety was discharged by the creditor's failure to have insured a building, the construction of which the surety had guaranteed, where the contract between the creditor and the principal required the creditor to insure the building. For similar holdings see cases cited in 4 Williston on Contracts, 3559, note 1. Whether the surety has notice of such right to collateral is immaterial, because if he had to pay the instrument he would be entitled to be subrogated to the rights of the creditor as to such collateral whether he knew of its existence or not. Even if the agreement to procure insurance was an agreement subsequent to the making and indorsing of the note, and can be classified as a collateral agreement so as to bring it without the rule that a surety is discharged by a breach thereof, the principle that a surety would be discharged to the extent of actual damage would apply, and in this case the damage would be sufficient to discharge the obligation. *Armour Fertilizer Works* v. *Kenney*, 161 *Ga.* 477 (131 S. E. 281).

2. The evidence demanded a verdict for the sureties, and errors in the charge, if any, were harmless.

The court did not err in overruling the motion for new trial.

*Judgment affirmed. Stephens, P. J., and Sutton, J., concur.*