**BRUNSWICK NURSING & CONVALESCENT CENTER, INC., Plaintiff,**

v.

**GREAT AMERICAN INSURANCE COMPANY, Defendant,**

v.

**READDICK SHEET METAL WORKS, a partnership consisting of Herbert Readdick, Gilbert L. Readdick, and William S. Readdick, and Enloe, West & Granade, Inc., Third-party Defendants.**

**No. 873.**

United States District Court
S. D. Georgia.
Jan. 9, 1970.

---

298

Albert Fendig, Jr., Brunswick, Ga., for plaintiff.

John M. Gayner, III, Brunswick, Ga., for defendant.

ORDER ON MOTION FOR SUMMARY JUDGMENT

LAWRENCE, Chief Judge.

Brunswick Nursing & Convalescent Center, Inc. has sued the defendant surety company on a payment and per-

formance bond furnished by Wall Construction Company in connection with the erection of a nursing home at Brunswick. The complaint alleges that the surety is indebted to plaintiff in the amount of $81,950 as a result of defects in the roof flashing and resulting water damage.

Defendant moves for summary judgment claiming that it has been discharged as a matter of law because of a change in the terms of the contract made without its consent and because the surety's risk was increased by the acts of the obligee. The matter has been submitted to the Court on briefs.

Brunswick Nursing & Convalescent Center was incorporated and organized in September, 1963. The record shows that it thereafter entered into an agreement with Associated Nursing Service, Inc. so as to enable Brunswick to obtain funds it needed in excess of a construction loan commitment of $390,000. Associated agreed to subscribe for 14,520 additional shares of the Nursing Center at $10.00 per share and to pay for such stock by paying all construction costs in excess of the first mortgage. The parties to the contract agreed that R. M. Kelley would have sole and exclusive authority to enter into contracts for Brunswick Nursing Center and to do everything necessary to accomplish the construction of the improvements. Kelley was president of Associated. He was also vice-president of the Nursing Center.

The erection of the building was commenced in 1964 pursuant to a contract under which Wall Construction Company agreed to construct the Center for the sum of $494,000. The payment and performance bond which was executed on January 7, 1964, referred to the construction contract dated December 20, 1964. That agreement provided that the building was to be erected in accordance with certain drawings and specifications. It called for bimonthly payments of 95% of the value determined by contract prices of labor and materials incorporated in the work.

Unbeknownst to Great American Insurance Company, certain arrangements and understandings were entered into between Kelley and Wall and Associated. Between February 1 and June 1, 1964, plaintiff drew down ten payments from the lending bank under the construction loan. The certificates for these periodic payments to Wall were approved by Kelley as vice-president of the Brunswick Nursing Center. In net cash they amounted to $359,000. But instead of all of these funds going to Wall Construction Company, 20% of the first two payments (totalling around $200,000) and 10% of the next eight payments was paid by Wall to Associated by check —a total of $78,337.50, which expectedly would have been retained in full by the contractor.

Thus, approximately 19 percent of the total loan commitment was diverted from the contract sums and line item amounts. This, says defendant, necessitates cost cutting by the contractor increasing the surety's risk through possibility of defective construction. The surety further asserts that if Wall had kept this amount it could be applied to the present claim of $81,950 for the defective construction of the building.

 Under Georgia law any change in the terms of the contract is considered a novation and discharges the surety in the absence of the latter's consent. The surety is also discharged by any' act of the creditor which injures him or increases his risk. Ga.Code § 103–202, 103–203. A novation under the statute is "a change in the nature and terms of the contract." American Surety Company of New York v. Garber, 114 Ga. App. 532, 151 S.E.2d 887. A surety is discharged even though he is not injured by the contract change. Alropa Corporation v. Snyder, 182 Ga. 305, 315, 185 S.E. 352. A change by the obligee and principal in the terms of payments to the contractor from that provided in the building contract operates to discharge the surety. Lowndes Alliance Warehouse Co. v. Greene, 17 Ga.App. 542, 87 S.E. 826; Mauney v. Hartford Accident

& Indemnity Co., 68 Ga.App. 515, 23 S. E.2d 490; Blackburn v. Morel, 13 Ga. App. 516, 79 S.E. 492; 72 C.J.S. Principal and Surety § 133b; 17 Am.Jur.2d Contractors Bonds § 31. Such change or alteration in the contract must be material. Johnson v. Brown, 51 Ga. 498; Whitmer Company v. Sheffield, 51 Ga. App. 623, 181 S.E. 119. I find that the diversion of over $68,000 of the construction funds into the pocket of Kelley or Associated was a material change in the contract provisions as to the payment schedule.[1]

However, this lawsuit cannot be resolved by resort to abstract principles of the law of suretyship. It is more complicated. As already noted, the agreement between Brunwick Nursing Center and Associated conferred broad powers on Kelley to make binding contracts for the former in connection with the project. As vice-president of Brunswick he approved certificates of periodic payments to the contractor. By secret agreement with the latter percentage kickbacks were then made by Wall to Associated. Difficult questions under the law of agency are evoked by these facts. The increased risk to the surety under § 103–203 must result from an act by the creditor. Is such requirement fulfilled by an unauthorized, surreptitious, self-profiting act of a plenary agent of the obligee? And, viewing the matter as a novation, did Kelley as plaintiff's vice-president or agent possess authority to modify the contract terms as to payment and in doing so to bind Brunswick by a new agreement? The law books seem to furnish no satisfactory answer.

A surety is not discharged by an agreement between the principal and the creditor, such as an extension of the contract, when the person who purports to represent the obligee lacks authority to do so. 72 C.J.S. Principal and Surety § 180. The agreement between Associated and Brunswick did not authorize Kelley to enter into any arrangement with Wall to his own profit and to Brunswick's prejudice. That was the agent's act, not his principal's. There is no evidence that the board of directors or any other officer of Brunswick knew that the dual agent had made an underhand deal with Wall. Unless his knowledge is imputed to Brunswick, plaintiff had none. If an officer or agent while acting for the corporation is himself engaged in perpetrating a fraud upon it, his knowledge is not constructive notice to the corporation. 3 Fletcher Cyclopedia Corporations § 826; Hartford Accident & Indemnity Company v. Hartley, D.C., 275 F.Supp. 610, 618 (affd. 389 F.2d 91). There is an exception to this rule called the "sole representative" doctrine which applies "when the transaction on behalf of the corporation, to which notice is sought to be imputed, is intrusted 'solely' to the officer or agent having the knowledge." See 3 Fletcher Cyclopedia Corporations § 827; Fouche & Fouche v. Merchants' National Bank of Rome, 110 Ga. 827, 36 S.E. 256; Taylor v. Felder, 3 Ga.App. 287, 59 S.E. 844. In connection with imputation of knowledge of a fraudulent dual agent to a principal see also 4 A.L.R.3d 224ff.

Kelley's authority to enter into contracts in connection with the project was "sole and exclusive"—indeed, it was

---

1. In Reliance Insurance Company of Philadelphia, Pa. v. Colbert, 124 U.S.App. D.C. 339, 365 F.2d 530 a majority of the Court held that there was a material change where the payment schedule shown below on the left was modified, by an addendum, to what is shown in the righthand column:

| | (1) | (2) |
| --- | --- | --- |
| Initial Deposit | $ 7,450 | $ 7,500 |
| Completion first floor shell to joists | 12,500 | 10,000 |
| Completion second floor joists | 12,500 | 10,000 |
| Roofed in | 12,500 | 5,000 |
| Completion of job | 12,500 | 25,000 |

so extensive that "the other parties hereto [and they included Brunswick Nursing Center] shall in no way interfere with the operations during construction." But does this mean that knowledge was necessarily imputed to Brunswick concerning acts by him amounting to a fraud against it when same were merely collateral to the agent's authorized act of approving certificates upon which payments to Wall were based? If knowledge of a dual agent is imputable to a principal it does not follow that the principal is bound by the agent's fraud against it under the respondeat superior doctrine. See William Danzer & Co. v. Western Maryland Ry., 164 Md. 448, 165 A. 463, 467.

 The ultra vires issue discussed above is not raised by plaintiff. Brunswick not only does not challenge Kelley's authority to do what he did but appears to defend it. It suggests (as did Wall) that the kickbacks were no more than "commissions" paid to Associated for its promotional work.[2] The position of Brunswick approaches a ratification of what Kelley did. But should not ratification come from the underlying facts and not what is said or not said in briefs? A grant of summary judgment in this case would be at best a precarious thing. I have asked more questions in this opinion than I have been able to answer. Summary judgments should stand on firm ground. During my consideration of this case each time I thought I had gotten there and took another step the ground gave way.

 Because of the murky legal atmosphere in this case the most expedient thing is to deny a summary judgment. This I do. Where we go from here depends to a certain extent upon the disposition of defendant's motion to compel arbitration under the Federal Arbitration Act. To what extent proceedings under that statute (if it is applicable) embraces the surety-discharge issue I am not presently sure. If it does not, my inclination is to order that issue tried first and separately from the other issues in the litigation.

A hard road may still lie ahead of the plaintiff. To begin with, I may be wrong in supposing that there are areas of doubt requiring a jury trial. The agent's act of paying the contractor with the understanding that he will get back part of the money as a secret commission may be one thing and not two. It may constitute an agreement or course of conduct which binds the obligee insofar as the surety's discharge is concerned. Great American appears to have had no knowledge of the kickback arrangement.[3] Brunswick was apparently without notice of it distinct from Kelley's own knowledge of his own wrongdoing. He completely dominated Associated. Brunswick clothed him with sole and plenary authority over the building project and its other officers and board of directors stood off to one side. Further, as I have pointed out, the plaintiff up to this point makes no contention that the kickback arrangement with Wall is not binding. However, I have denied the motion for summary judgment, believing that genuine issues of fact may be lurking in some of the shady factual areas of the litigation.

 This is an appropriate time for commenting upon a subsidiary legal question connected with the surety-discharge issue. The loss to Brunswick through the alleged defective construction by Wall exceeds the amount of the

2. "I would perfer to call it a commission, like you sold something and I paid you something, you were salesman as far as I was concerned. * * * These people were salesmen for construction work." Wall disposition, p. 92.

3. Plaintiff contends that Great American Insurance Company knew or should have known of the "commissions" because on a previous occasion it bonded a job for Wall (Brunswick was not there involved) knowing from the application that the contract price considerably exceeded the cost of the work. The fact that in one case out of seven the surety may have been aware that Wall had a large profit in a job does not impute knowledge to defendant that the contractor was making kickbacks to Kelley on the project at Brunswick.

kickbacks by some $14,000. If Great American is discharged, is it discharged entirely or merely pro tanto? In a number of jurisdictions a material change in a contract does not operate as a complete discharge of a compensated surety. 127 A.L.R. 69; 17 Am.Jur. Contractors Bonds §§ 38, 106; 72 C.J. S. Principal and Surety § 124g. Georgia draws no distinction between compensated and uncompensated sureties. The rule in this State seems to be that where a creditor breaches "any obligation arising under the original contract" there is a total discharge of the surety as distinguished from the pro tanto release that occurs in the case of injury to the obligee arising out of a collateral agreement not affecting the contract itself. Armour Fertilizer Works v. Kenney, 161 Ga. 477, 131 S.E. 281; Seaboard Loan Corporation v. McCall, 61 Ga.App. 752, 7 S.E.2d 318; Evans v. American National Bank & Trust Company, 116 Ga.App. 468, 157 S.E.2d 816.[4]

In the present case it appears that if the surety is discharged, it would be completely discharged and not merely pro tanto.

---

4. In Gilmore v. Royal Indemnity Company, 5 Cir., 240 F.2d 101, Judge John R. Brown in a concurring opinion stated that he would not predict that a Georgia Court would apply the surety discharge rule to a building contract so as to vitiate the entire obligation of the surety. "On the contrary, I would expect Georgia Courts merely to reduce, *pro tanto*, the amounts payable to the extent, if any, which prepayment by Gilmore to the Contractor may have actually prejudiced the surety." *ibid.*, p. 107.