**Mrs. J. H. RICKS, Sr., Plaintiff,**

v.

**UNITED STATES of America, and the Bank of Soperton, Defendants.**

**No. CV376–1.**

United States District Court,
S. D. Georgia, Dublin Division.

Oct. 5, 1976.

Benjamin M. Garland, William T. Exum (Hall & Bloch), Macon, Ga., for plaintiff.

Edmund A. Booth, Jr., Asst. U. S. Atty., Augusta, Ga., for United States.

J. Carlton Warnock, Soperton, Ga., for Bank of Soperton.

Edwin D. Ledford, District Counsel, Small Business Administration, Atlanta, Ga., for defendant.

## ORDER

LAWRENCE, District Judge.

### FINDINGS AND CONCLUSIONS AS TO PRELIMINARY INJUNCTIVE RELIEF

Plaintiff filed this action in equity seeking to enjoin foreclosure proceedings against her property by the Small Business Administration. The Bank of Soperton is also a party. The case is before this Court

on plaintiff's prayer for preliminary injunctive relief and on motions for summary judgment filed by the plaintiff and the defendants. An extensive evidentiary hearing was held on March 12, 1976, at which testimony was heard from a number of witnesses and affidavits received from others.

## I

### History of Litigation

The evidence shows that on November 15, 1972, Ricks IGA Foodliner, Inc., a Georgia corporation which owned and operated a grocery store business in Soperton, Georgia, executed a promissory note in favor of the Bank of Soperton in the principal amount of $100,000. As security therefor it executed a first mortgage in favor of the Bank on the grocery store property. The note and mortgage were subsequently assigned to the Small Business Administration.[1]

Plaintiff was the Secretary of the corporation. Her son, J. H. Ricks, Jr., was President. At the time of the execution of the promissory note referred to, Mrs. Ricks executed a deed to secure debt on her residence as security for her guaranty of the corporate note. Plaintiff alleges that on or about May 6, 1975, the Small Business Administration foreclosed on the grocery store. The property was sold at public outcry for $60,000. Mrs. Ricks contends that this price was grossly below the fair market value of the property.

In January, 1976 foreclosure proceedings were instituted by the government against plaintiff's residential property in Soperton. The sale was set for February 3, 1976, at the Treutlen County Courthouse. By agreement of the parties to this action, it was postponed pending the outcome of this litigation.

Plaintiff says that the foreclosure proceedings should be enjoined because

(1) SBA did not comply with Ga.Code Ann. § 67–1503 which requires that an application for judicial confirmation be made within 30 days of the foreclosure sale as a condition to any action for a deficiency judgment.

(2) The guaranty agreement executed by plaintiff is null and unenforceable in that she did not know that a portion of the loan proceeds of $100,000 was to be applied by the Bank of Soperton to satisfy a prior secured indebtedness (approximately $18,570) owed to the Bank by her husband.

(3) There was a novation of plaintiff's guaranty relieving her of liability thereunder as a result of the subsequent loan by the Bank of $30,000 to Ricks IGA Foodliner, Inc.

(4) The guaranty of the loan by Mrs. Ricks was in reality a contract of suretyship executed by a married woman and is void and unenforceable against her property.

On February 17, 1976, the Government filed a motion to dismiss the complaint or in the alternative a motion for summary judgment. SBA contends that federal law governs the rights of the parties in this case and that the requirement of judicial confirmation is inapplicable to such agency. The United States also challenges the jurisdiction of this Court to enjoin SBA and asserts sovereign immunity against such relief.

An evidentiary hearing was held at Savannah on March 12, 1976. On the same day plaintiff filed a Motion for Summary Judgment in which she contends that she is entitled to judgment as a matter of law because the Small Business Administration made no application to the Superior Court for a judicial order of confirmation following the foreclosure and sale of the "Ricks' Food Center" property.

On March 22, 1976, the Bank of Soperton filed a Motion to Dismiss or in the alternative for Summary Judgment on the ground that no fraud was perpetrated upon plaintiff in connection with the $100,000 loan made by the Bank to Ricks IGA Foodliner, Inc.

Briefs have been filed by both sides.

---

1. Prior to the consummation of the transaction, SBA agreed to participate with the Bank of Soperton to the extent of 75% of the loan to the corporation.

## II

### The Georgia Law Governing Actions for Deficiency Judgments Following Foreclosure

Under the law of this State, when real estate is sold pursuant to a power in a security deed, no action may be taken to obtain a deficiency judgment against the debtor unless the foreclosing party reports the sale within 30 days to the judge of the superior court and obtains an order of confirmation following notice of the hearing and proof as to the true market value of the property sold. Ga.Code Ann. §§ 67–1503 *et seq.* In the instant case that procedure was not followed by SBA. The term "debtor" as used in § 67–1505 includes a guarantor of the debt. *First National Bank & Trust Company v. Kunes et al.*, 128 Ga.App. 565, 567, 197 S.E.2d 446.[2] That decision involved an attempt by a mortgagee to obtain a deficiency judgment against a guarantor to whom the required notice of the confirmation hearing was not given.

No deficiency judgment as such is sought against Mrs. Ricks. However, there was a deficiency between the total indebtedness due by the borrower and the amount the grocery store property brought at the sale. It was sold to Horace Harrell as highest bidder for $60,000. Plaintiff argues that the imminent sale of her home under the security deed given to secure her guaranty of the principal loan is merely an attempt to satisfy the deficiency resulting from the sale of the mortgaged corporate property. It follows, contends plaintiff's counsel, that SBA cannot, in the absence of compliance with Ga.Code Ann. § 67–1503, foreclose on her residence in order to make up such deficiency.

SBA replies that it is not endeavoring to obtain a deficiency judgment within the meaning of that term as used in § 67–1503. Its foreclosure proceeding against the guarantor has as its purpose, says the Government, enforcement of the guaranty securing the corporate debt.

The Government's answer to the failure of SBA to have the sale judicially confirmed is that federal common law governs rather than the statutory protection afforded by the State to debtors in foreclosure proceedings. This is ground over which federal lending agencies and borrowers and their guarantors have frequently fought as will be seen below.

## III

### Applicability to the Pending SBA Foreclosure of the Georgia Statute Requiring Judicial Confirmation of Sale as a Condition to Deficiency Judgment

*United States v. Yazell*, 382 U.S. 341, 86 S.Ct. 500, 15 L.Ed.2d 404 involved a loan made to a husband and his spouse which was secured by a chattel mortgage. Following default and foreclosure, suit was brought by SBA for the deficiency. Mrs. Yazell defended on the ground that under Texas law she could not personally bind herself or her property in such a case. The Fifth Circuit upheld the district court's ruling based on Texas law in favor of the wife. The Supreme Court affirmed, stating:

"[I]t is clear that the state rule should govern. There is here no need for uniformity. There is no problem in complying with state law; in fact, SBA transactions in each state are specifically and in great detail adapted to state law. There is in this case no defensible reason to override state law unless, despite the contrary indications in *Fink v. O'Neil* [106 U.S. 272, 1 S.Ct. 325, 27 L.Ed. 196] and elsewhere as has been set forth, we are to take the position that the Federal Government is entitled to collect regardless of the limits of its contract and regardless of any state laws, however local

---

2. "It would only be under the principle of reductio ad absurdum to say the General Assembly wished to protect the principal debtor from double payment, but did not have any concern whatever for endorsers and guarantors. The statute, by using the word "debtor," included all who were presently subject to payment of the debt, or who might be subjected to payment thereof, if within the knowledge of the payee of the note." At 567–68, 197 S.E.2d at 448. See also *Goodman v. Nadler*, 113 Ga.App. 493 at 496, 148 S.E.2d 480.

and peculiarly domestic they may be." At 357–58, 86 S.Ct. at 509.

The Fifth Circuit has held that rights and liabilities of parties in actions by the United States on FHA farm mortgages are determinable with reference to federal law. *United States v. Hext*, 5 Cir., 444 F.2d 804. That Court has also said that federal common law controls the rights of the parties in the case of a guaranty by SBA of a loan fraudulently induced by a borrower. *First National Bank, Henrietta v. Small Business Administration*, 5 Cir., 429 F.2d 280. In *United States v. Columbia Milling Company*, D.C.Fla., 379 F.Supp. 225, aff'd, 497 F.2d 1367 (5th Cir.) it was said that "Federal law controls the rights of parties to Small Business Administration loan guaranty agreements, and particularly to the granting of deficiency decrees arising therefrom." 379 F.Supp. at 226.

However, none of these cases reaches the problem we have here, the applicability, under the facts of this case, of state statutory restrictions on deficiency judgments as related to a guarantor against whose property the federal agency seeks to enforce its rights as mortgagee.

In *Bumb, Trustee v. United States*, 276 F.2d 729 (9th Cir.) the enforcement of a chattel mortgage held by the Small Business Administration collided with the bulk sales statute of California with which the lending agency failed to comply. SBA contended that it is a federal agency and that the validity of its security was to be tested by federal as distinguished from state law. The Ninth Circuit held that the chattel mortgage was not exempt from the bulk sales law and was conclusively presumed to

be fraudulent and void. "We are unable to conclude that any federal policy in this case requires us to override the sound and well-established policy of the several states which have a vital interest in the protection of local property rights and local creditor citizens." At 738.[3]

In *United States v. MacKenzie*, 9 Cir., 510 F.2d 39 the same Court was confronted with a situation where SBA foreclosed on real estate securing a guaranty of a loan the Agency had made to a Nevada corporation in which the law limits a deficiency judgment to the difference between the unpaid balance and the fair market value of the property. The district court entered a judgment for the difference between the bid price and the unpaid balance. The Court of Appeals reversed in an *en banc* decision.[4] It said (at 42):

"Recognition of the debtor protections before us does not pose any significant threat to the legitimate interests of the Government in having its loans repaid. Devices to assure that fair market prices are received at foreclosure sales redound to its benefit. Depriving the Government of potential 'double recoveries' created by artificially large deficiencies that it has caused takes away nothing to which it is entitled. . . . Here *Yazell* controls and requires deference to the state laws before us."

One may endlessly parade the various decisions before a court for review and inspection and still reach no satisfying conclusion as to this case. The same is true of the law review articles pertaining to choice of

3. However, the Circuit Court pointed out that the bulk sales act merely regulated the acquisition of a valid security interest and not the remedy of the mortgagee in enforcing such interest after default. In that context, it said, quoting from *United States v. View Crest Garden Apartments, Inc.*, 268 F.2d 380, 383 (9th Cir.), cert. den. 361 U.S. 884, 80 S.Ct. 156, 4 L.Ed.2d 120: "Local rules limiting the effectiveness of the remedies available to the United States for breach of a federal duty can not be adopted."

4. "Upon foreclosure of these mortgages the courts below denied appellants the protection of state laws which would respectively have limited the deficiency judgment against MacKenzie and given Engine Service Co., Inc., redemption rights in the foreclosed property. We have taken these cases en banc to resolve the question whether federal law defers to or adopts these state laws when the creditor is the federal government and the property involved is security for loans made by the Small Business Administration ('SBA')." *United States v. MacKenzie*, at p. 40.

law as applied to such situations as we have here.[5]

The decisions usually look at what the loan documents say as to the intent of the parties in respect to the governance of state or of federal law. I turn to that subject.

## IV

### *"Applicable Law" Provision in the Note*

The $100,000 note executed by the corporation refers to SBA and contains an assignment to it. The note contains the following provision: "This promissory note is given to secure a loan which SBA is making or in which it is participating and, pursuant to Part 101 of the Rules and Regulations of SBA (13 C.F.R. 101.1(d)), this instrument is to be construed and (when SBA is the Holder or a party in interest) enforced in accordance with applicable Federal law."

The Regulation referred to in the note provides, under the heading of *"Applicable law"*, the following:

"(1) Loans made by SBA are authorized and executed pursuant to Federal programs adopted by Congress to achieve national purposes of the U.S. Government.

(2) Instruments evidencing a loan, obligation of security interest in real or personal property payable to or held by the Administration or the Administrator, such as promissory notes, bonds, guaranty agreements, mortgages, deeds of trust, and other evidences of debt or security shall be construed and enforced in accordance with applicable Federal law.

(3) In order to implement and facilitate these Federal loan programs, the application of local procedures, especially for recordation and notification purposes, may be utilized to the fullest extent feasible and practicable. However, the use of local procedures shall not be deemed or construed to be any waiver by SBA of

any Federal immunity from any local control, penalty, or liability.

(4) Any person, corporation, or organization that applies for and receives any benefit or assistance from SBA, or that offers any assurance or security upon which SBA relies for the granting of such benefit or assistance, shall not be entitled to claim or assert any local immunity to defeat the obligation such party incurred in obtaining or assuring such Federal benefit or assistance." 13 C.F.R. § 101.-1(d)(1), (2), (3), (4)

The security deed covering the real estate which secured the note of the corporation states: "This deed and the instrument hereby secured shall be deemed and construed to be contracts executed and to be performed in Georgia." The power of sale provides in case of default for the sale of the property at auction at the Courthouse in Treutlen County.

The guaranty executed by Mrs. Ricks, which was on an SBA form, contains no "applicable law" provision. The security deed signed by plaintiff securing her guaranty of the loan to the corporation has the same provision in respect to Georgia law found in the mortgage executed by the principal debtor.

The note dated April 2, 1973, evidencing the additional $30,000 loan to the corporation contains the reference to the Rules and Regulations of SBA as to enforcement "in accordance with Federal law". Mrs. Ricks guaranteed such note and gave a security deed on her property as security.

"[T]his instrument is to be construed and . . . enforced in accordance with applicable Federal law." This provision of the note of the debtor corporation refers specifically to the SBA Regulation above quoted. It is broad enough to cover not only the interpretation of the promissory note under federal law but the enforcement of that

---

**5.** The following are cited in the concurring opinion in *United States v. MacKenzie, supra*, 510 F.2d 43: "Note, Federal Courts—Choice of Controlling Law in Cases Involving Federally Insured Mortgages, 49 N.C.L.Rev. 358 (1971); Note, Property—Mortgages—State Redemp-

tion Statutes Not Applicable to Foreclosure by the United States on FHA Insured Mortgage, 23 Vand.L.Rev. 1384 (1970); Note, Federal Courts—Refusal to Apply State Redemption Statute to FHA–Insured Mortgage Foreclosure, 17 Wayne L.Rev. 178 (1971)."

instrument. Enforcing it would necessarily include the foreclosure of the mortgage given by the guarantor as security for her obligation. The federal common law as related to deficiency judgments was discussed in *United States v. Wells,* 5 Cir., 403 F.2d 596. In that Florida case the Fifth Circuit held that the application of federal law is needed to assure uniform administration of the nationwide Veterans Administration loan program and that the federal courts possess jurisdiction to award deficiency judgments. The traditional defense of gross inadequacy of the successful bid at the foreclosure sale is applicable, said the Court. At 598.

In *United States v. Yazell, supra,* 382 U.S. pp. 357–358 n. 35, 86 S.Ct. p. 509 Mr. Justice Fortas observed that "The Financial Assistance Manual of the Small Business Administration, SBA–500, is replete with admonitions to follow state law carefully." Among the examples given was § 401.03 which reads: "*Compliance with Applicable Laws.* When the United States disburses its funds, it is exercising a constitutional function or power and its rights and duties are governed by Federal rather than local law. However, it is frequently necessary, in the obtaining of a marketable title or enforceable security interest in property, to follow local procedural requirements and statutes."

## V

*Applicable Law (Continued); Non-Applicability of the Georgia Statute Governing Deficiency Judgments*

The provision in the $100,000 note which makes federal law applicable in enforcement of the obligation, taken together with the SBA Regulations, may amount to an agreement that such law controls and that it obviates the necessity of resort by the lender to the judicial confirmation proce-

dure of the State as a condition to obtaining a deficiency judgment. I am not sure. However, this Court is by no means convinced that the pending foreclosure by SBA of the guarantor's security deed amounts to the exercise of rights in the nature of a deficiency judgment within the meaning of § 67–1503. No Georgia case says so. In fact, the decision of the Supreme Court in *Salter v. Bank of Commerce,* 189 Ga. 328, 6 S.E.2d 290 seems to point in the opposite direction.[6]

In considering the question of federal-law hegemony in this case two things must be remembered. First, SBA could have proceeded directly against Mrs. Ricks on her guaranty for the entire balance due by the principal debtor without first enforcing its rights under the corporation's security deed securing the $100,000 loan. Under the guaranty agreement, the guarantor agreed that upon default by the debtor she would, "immediately upon the written demand of Lender", pay the debt due as the "direct and primary obligation" of the guarantor without exhaustion of the creditor's remedies.

Secondly, the Small Business Administration was not limited to selling the property of Mrs. Ricks at the courthouse door under the power of sale granted in her security deed. The right to sell at auction, under the terms of the instrument, was merely "cumulative to the remedies for collection of said indebtedness provided by law". Other remedies of the lender included an action for foreclosure of the debt deed in this Court. The jurisdiction of courts of chancery over foreclosure proceedings is inherent. *McCampbell v. Warrich Corporation,* 109 F.2d 115 (7th Cir.); 59 C.J.S. Mortgages § 608. Indeed, the Small Business Administration Act confers jurisdiction on United States district courts to entertain

---

**6.** "The act of the General Assembly of 1935 (Ga.L.1935, p. 381) does not inhibit sale, under power conferred by security deed, of property other than property previously sold by the creditor-grantee in such deed, which other property failed to bring at the previous sale the amount of the debt for which it was conveyed as security. The statute cited being inapplicable, it cannot be invoked by the debtor-grantor by way of suit to enjoin the creditor from selling such other property, on the alleged ground that the creditor had failed to comply with the statute by applying to the court for confirmation of the previous sale."

suits by the Administrator in the performance of his statutory powers and duties. 15 U.S.C. § 634(b)(1). It was unnecessary for SBA to utilize state remedies upon default. This Court would have been a proper forum for a foreclosure action by SBA in equity to enforce the security plaintiff gave to secure her guaranty.

However, the Agency took the route lenders usually take in such cases. It first undertook to foreclose on the security deed of the principal debtor. After the foreclosure sale, it did not seek under State law judicial confirmation thereof on proof of the true market value of the property sold. Determination thereof was essential to any deficiency judgment against the debtor. However, Small Business Association seeks no such relief against the corporation or the guarantor. Mrs. Ricks contends that as guarantor she is a "debtor" within the meaning of the Georgia statute governing deficiency judgments. Therefore, argues counsel, SBA is precluded from enforcing the guaranty by foreclosure of her security deed. Stated differently, the fact that SBA did not secure judicial confirmation of the sale destroyed all of its rights against Mrs. Ricks as to the guaranty by her of the corporate debt. So her counsel contends.

Plaintiff has come into a court of equity where climatic conditions are inhospitable to mere technicality. "The facts in this case are less comfortable in the gloves of the law than in the greatcoat of equity." *Jordan Company v. Bethlehem Steel Corporation*, 309 F.Supp. 148, 152 (S.D., Ga.). As stated above, SBA is not attempting to collect on a deficiency judgment. It is proceeding against the guarantor on her "direct and primary obligation" to pay the debt of the defaulting debtor. In the absence of compelling state law, which is lacking here, general federal law governs. As guarantor, Mrs. Ricks is obligated to pay the difference between the amount due by the debtor and the $60,000 credit arising from the foreclosure sale of the "Ricks' Food Center" property. She is liable for the balance of the debt of the corporation less the fair market value of the property at the time of the foreclosure sale. However, the inadequacy of the price realized must be such as to shock the conscience. *Magnolia Springs Apartments, Inc. v. United States*, 323 F.2d 726 (5th Cir.); *United States v. Wells, supra,* 403 F.2d 596.

## VI

### *The Novation Argument*

Plaintiff contends that the fact that a portion of the loan proceeds was applied to the previous indebtedness of her husband to the Bank constitutes a novation, releasing her from the guaranty contract. She also argues that the loan of $30,000 to the corporation subsequent to the $100,000 loan is a novation.

"Any change in the nature or terms of a contract is called a novation; such novation, without the consent of the surety, discharges him." Ga.Code Ann. § 103–202. The rule applies to guarantors as well as sureties. *Whitmer Company v. Sheffield*, 51 Ga.App. 623, 181 S.E. 119. Under Ga.Code Ann. § 103–203, "Any act of the creditor, either before or after judgment against the principal, which injures the surety or increases his risk, or exposes him to greater liability, shall discharge him."

### A

Plaintiff argues that the application of the proceeds of the $100,000 to the prior indebtedness of her husband constituted a "change" in the loan application and a breach of its terms resulting in a novation. See *Seaboard Loan Corporation v. McCall*, 61 Ga.App. 752, 7 S.E.2d 318; *Liberty National Bank & Trust Company of Savannah v. Interstate Motel Developers, Inc.*, 346 F.Supp. 888 (S.D., Ga.).

R. A. Perry, Vice President of the Bank of Soperton, testified that Mrs. Ricks knew about the agreement to pay the prior indebtedness owed by her husband and discussed same with her. He said that he apprised her of the seriousness of signing the guaranty and securing same by a mortgage on her residential property. He told plaintiff that the guaranty was necessary

since the corporate property was not adequate security for the loan.

The certification and receipt signed by J. H. Ricks, Jr. as President of the borrower was attested to by plaintiff as Secretary on November 15, 1972. The corporation acknowledged receiving the proceeds of the loan subject to the provisions of the Authorization which states that "the proceeds of this disbursement, on the account of this loan, will be used, and all previous disbursements have been used, in accordance with the Small Business Administration authorization dated February 15, 1972, and any amendments thereto."

The "Brief Description and History of Business" prepared by J. H. Ricks, Jr., acknowledged an indebtedness owed to the Bank of Soperton which is to be "repaid out of this loan." The guaranty agreement executed by the plaintiff as guarantor on November 15, 1972, specifically refers to the Authorization.

Plaintiff testified at the hearing that she had read all she was supposed to read of the documents regarding the $100,000 loan; that she could read and that no one prevented her from reading any of them; that she was an officer of the corporation and signed the documents for the corporation as secretary and that she was part owner thereof, and that she signed the Certification and Receipt.

J. H. Ricks, Jr. testified that he was aware of the indebtedness due to the Bank and that it was a condition of the loan that such prior indebtedness be paid out of the proceeds.

■ One who signs a written document without reading it, unless prevented from doing so by some fraud or artifice, is chargeable with knowledge of its contents. *Musgrove v. Musgrove,* 213 Ga. 610, 612, 100 S.E.2d 577; *Mesa v. Poole,* 127 Ga.App. 426, 428, 193 S.E.2d 925; *Reserve Life Insurance Company v. Chalker,* 127 Ga.App. 565, 194 S.E.2d 290; *Ayers Enterprises v. Adams,* 131 Ga.App. 12, 16, 205 S.E.2d 16.

■ Mrs. Ricks admitted that she signed and read all pertinent documents in connection with the loan. She is chargeable with knowledge of the previous loan to her husband and the condition that the indebtedness be paid from the SBA loan. She is precluded from claiming any novation.

**B**

■ Nor is there merit in plaintiff's contention that the subsequent $30,000 loan by the Bank to the borrowing corporation constituted a novation which releases Mrs. Ricks from her guaranty of the original loan. Prior to consummation of the second loan, a resolution was adopted by the board of directors which authorized Mrs. Ricks as secretary and her son as president to execute an application for a loan not to exceed $30,000. The note for that amount was signed by plaintiff in her capacity as secretary. She executed a guaranty secured by the same property that was security for her guaranty of the $100,000 loan. The $30,000 indebtedness was incurred with plaintiff's knowledge and consent and was separate and distinct from the $100,000 loan. It did not amount to any novation of her personal guaranty of the latter debt.

**VII**

*Guaranty versus Suretyship*

Plaintiff argues that her guaranty of the $100,000 loan is unenforceable as an agreement of suretyship which is void under Georgia law in the case of a married woman.

■ There are two ready answers to this contention. In the first place, the 1969 amendment to Ga.Code Ann. § 53–503 materially changes the prior law in validating contracts of suretyship by a married woman that binds her separate estate. Under the statute as amended, "The wife may not bind that portion of her separate estate which is composed of tangible personal property by any contract of suretyship . . . ." It is "a far more narrowly drawn statute, placing limitations only upon a wife's power to bind that 'portion of the separate estate which is composed of tangible personal property.'" *Walsh v.*

*Campbell*, 130 Ga.App. 194, 200, 202 S.E.2d 657, 662. The guaranty is sought to be enforced on Mr. Ricks' real property, not on tangible personal property.

In the second place, the guaranty by Mrs. Ricks is not a contract of suretyship. It secured the corporate debt, not her husband's. As an officer and stockholder of the borrowing corporation, a new, separate and independent consideration flowed to her. Prior to 1969 a married woman could and still can bind her separate estate by a contract of *guaranty*. *Wolkin v. National Acceptance Company*, 222 Ga. 487, 150 S.E.2d 831; *McCallum v. Griffin*, 289 F.2d 135 (5th Cir.); *Scarboro v. Universal C.I.T. Credit Corporation*, 364 F.2d 10 (5th Cir.); *Rankin v. Smith*, 113 Ga.App. 204, 147 S.E.2d 649.

## VIII

### *Adequacy of Price Obtained at the Foreclosure Sale*

Plaintiff filed two affidavits in support of her contention that the proceeds of the foreclosure sale were inadequate. John J. Kersting deposed that he has been affiliated with Wetterau, Inc., a wholesale grocery concern, for nine and one-half years. He was Assistant to Division Manager and Director of Marketing for that Company in an area covering Soperton, and was familiar with the Ricks IGA Foodliner, Inc. grocery store. He states that he attended a meeting in 1974 with Lloyd B. Williams, President of the Williams Company, a retail grocery concern, officials of the Bank of Soperton and from the Small Business Administration. At that time Mr. Williams was making a proposal to purchase the Ricks grocery store property for approximately $100,000 plus the inventory. It was Kersting's opinion that this was in line with the fair market value of the property.

Mr. Williams stated in his affidavit that in October, 1974, he was prepared to offer such a price. He and Mr. Ricks were unable to get together on a price. Williams deposed that SBA did not notify him of the foreclosure sale, Neither, may I add, did Mr. Ricks apprise him of the pending public sale.

Jack Rhoads, a Division Supervisor for Wetterau, Inc., has been in the grocery business for thirty years. Ricks IGA Foodliner was located in his division. He deposed that he had personal knowledge of Mr. Williams' interest in acquiring the store and that, in his opinion, the property had a fair market value in April, 1975, of approximately $100,000 plus inventory.

At the March 12th hearing Jack S. Hathaway, President of Hathaway Service & Sales Company, testified that he has appraised and liquidated property for the United States for seven years. He conducted the appraisal and liquidation of the property. Mr. Hathaway testified that the total appraisal was $55,200.00 and that a diligent effort was made to obtain bids on the property. The Government introduced exhibits in connection with the sale, including notice of the auction, the appraisal report of E. R. Tennenbaum and the breakdown of expenses of Hathaway Service & Sales Company. A printed brochure was distributed to potential buyers with photographs of the property, equipment and inventory. The appraisal report stated that the value of the food merchandise is limited because half of the food inventory were packaged items and dated goods. The equipment required considerable expense in removal to another location. It had not been used for a long period of time. The report stated that "depressed market conditions makes the appraisal much lower than the original value of this property".

Ralph A. Perry, Vice-president of the Bank of Soperton, stated that he attended the sale of the property which drew a large crowd and that every effort was made by the auctioneer to obtain bids.

Under the facts of this case, the Court cannot say that the successful bid of $60,000 was inadequate; certainly not to the point that the price realized at the sale shocks the conscience. See *United States v. Wells, supra*, 403 F.2d 596; *S & G Investment Inc. v. Home Federal Savings and Loan Association*, 164 U.S.App.D.C. 263, 505 F.2d 370;

*Massey v. National Homeowners Sales Service Corporation of Atlanta,* 225 Ga. 93, 165 S.E.2d 854; *Kouros v. Sewell,* 225 Ga. 487, 169 S.E.2d 816.

I find that no fraud by SBA was involved in the foreclosure and sale of the Ricks Supermarket property. Nor was fraud practiced upon Mrs. Ricks in obtaining the guaranty of the loan by implied representations to her that the grocery store property was worth $130,000 when two years later it had a value of only $60,000.

IX

*Jurisdiction and Immunity of SBA from Injunctive Relief*

Plaintiff predicates jurisdiction as to SBA on the Small Business Act, 15 U.S.C. §§ 631 *et seq.* Venue in the Southern District of Georgia is based on 28 U.S.C. § 1391(e) which provides for same in civil actions against officers and agencies of the United States in the district where the cause of action arose.

The Small Business Administration contends that the Act creating it prohibits the grant of injunctive relief against the Administrator. 15 U.S.C. § 634(b)(1). That section provides that such official may be sued in any state court having general jurisdiction or in any United States district court, without regard to the amount in controversy, but that "no attachment, injunction, garnishment, or other similar process" may be issued against "the Administrator or his property". The Government argues that there is no federal statute authorizing injunctions against the United States of America and that sovereign immunity bars such relief against it or SBA unless waived. As to the prohibition of injunctions against the Administrator see *Romeo v. United States,* 462 F.2d 1036, 1038 (5th Cir.); *Mar v. Kleppe,* 520 F.2d 867, 868 (10th Cir.); *Analytical Systems Corporation v. Small Business Administration,* 346 F.Supp. 1149 (D., Mass.).

It seems to me a harsh construction to interpret § 634(b) literally with the result that it deprives a debtor of his only effective remedy (an injunction) where SBA seeks foreclosure of a mortgage claimed to be void and unenforceable. To impute any such intent to Congress is a matter of some difficulty. No decided case appears to say as much. There are decisions which suggest that injunctive relief may be obtained if the Administrator exceeds his authority. See *Dubrow v. Small Business Administration,* 345 F.Supp. 4 (C.D., Cal.); *Simpkins v. Davidson,* 302 F.Supp. 456 (S.D., N.Y.); *Valley Forge Flag Company, Inc. v. Kleppe, Administrator,* 165 U.S.App.D.C. 182, 506 F.2d 243, 244. It has also been indicated that what § 634(b) prohibits is "the issuance of an injunction against the administrator to compel a specific result in a discretionary area". See *Peoples Brewing Company v. Kleppe,* 360 F.Supp. 729, 730 (E.D., Wis.).

The Act provides that the Administrator may "sell at public or private sale . . . in his discretion . . . any . . . security assigned to . . . him in connection with the payment of loans granted under this chapter". I do not think that the use of the term "discretion" refers to discretionary actions of the Administrator which cannot be interfered with by injunction. Foreclosing of an SBA mortgage that secures a debt which is in default seems more of a ministerial than a discretionary act.

To allow the Administrator to undertake foreclosure proceedings against a debtor and, in the same Act, to withdraw the only remedy available to the latter against unlawful action strikes this Court as verging on denial of due process.

This Court is aware that statutes waiving governmental immunity are to be strictly read "with an eye to effectuating a restrictive legislative purpose when Congress relinquishes sovereign immunity". *Honda v. Clark,* 386 U.S. 484, 501, 87 S.Ct. 1188, 1197, 18 L.Ed.2d 244. On the other hand, the Supreme Court has said that where Congress establishes an agency, such as FHA, and authorizes it to engage in business transactions with the public and to sue and be sued, "it cannot be lightly assumed that restrictions on that authority

are to be implied". *Federal Housing Administration v. Burr*, 309 U.S. 242, 245, 60 S.Ct. 488, 490, 84 L.Ed. 724. Governmental immunity should be narrowly construed, I think, where the right to sue an Agency is given but, literally read, withholds from the citizen the only effective procedural remedy available in resisting a foreclosure sale.

The defense of sovereign immunity as to the injunctive relief sought by plaintiff is overruled although with some hesitation and misgiving by this Court.

 A jurisdictional problem also exists in the instance of the Bank of Soperton. The sole federal-question nexus of such defendant with the case is that it made the original loan in which SBA participated. The Bank is not foreclosing the security deed given by Mrs. Ricks. SBA is. Misrepresentation by the Bank is charged by plaintiff in respect to the value of the grocery store property. This Court has found that there was no fraud. The allegation raises no federal question and evokes no federal jurisdiction. The claim against the Bank of Soperton is dismissed by this Court, of its own motion, for lack of jurisdiction.

### ORDER

What has been found in this Opinion as fact and ruled as law satisfies the requirements of Rule 52(a) and formal findings and conclusions will not be entered.

Plaintiff's prayer for a preliminary injunction enjoining foreclosure proceedings by Small Business Administration against guarantor's residential property is denied.

The evidentiary hearing on March 12th involved the grant or denial of preliminary injunctive relief against the foreclosure sale. There was no order of court consolidating that issue with the permanent injunction. Under Rule 65(a)(2), "Consolidation cannot be ordered by the court without adequate notice and an opportunity for a full hearing on the merits". *American Federation of Government Employees, A.F. of L.–C.I.O., Local 3319, United States Deputy Marshals v. Colburn, Director*, 531 F.2d 314 (5th Cir.). However, there was a plenary hearing on the merits of the case and little, if anything, can be added to what has been raised, tried, argued and decided. The Order of this Court on the preliminary injunction moots the case. Final judgment will be entered in favor of the United States and its Agency, Small Business Administration.

The motions for dismissal and for summary judgment filed by the three parties are overruled.

The action against Bank of Soperton is dismissed for want of jurisdiction.

Judgment will be entered against plaintiff accordingly.