**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**James C. DISMUKE, Defendant-Third
Party Plaintiff-Appellant,**

v.

**FIRST STATE BANK & TRUST CO.,
Third Party Defendant Appellee.**

**Nos. 79–3424, 79–3591
Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

May 5, 1980.

* Fed.R.App.P. 34(a); 5th Cir. R. 18.

English & Roundtree, M. Dale English, Adel, Ga., for defendant-third party plaintiff-appellant.

Willis L. Miller, III, Valdosta, Ga., Gregory J. Leonard, Asst. U. S. Atty., Macon, Ga., for U. S. A.

Barham, Bennett, Miller & Stone, Willis L. Miller, III, Valdosta, Ga., for First State Bank & Trust Co.

Before RONEY, KRAVITCH and TATE, Circuit Judges.

TATE, Circuit Judge:

The defendant Dismuke seeks relief from the district court grant of summary judgment in favor of the United States of America holding him liable in the maximum amount of $50,000 on the guaranty agreement held by the Small Business Administration (the SBA). As third party plaintiff, the defendant also appeals the grant of summary judgment dismissing his third party demand against the First State Bank & Trust Co. (the Bank), the lender on the principal debt which Dismuke guaranteed and assignor of the agreement to the SBA as part of a participating loan arrangement. Because we now hold that the government's suit is barred by a Georgia statute prohibiting an action to obtain a deficiency judgment if there has been no judicial confirmation of the foreclosure sale within thirty days of such sale, we reverse the summary judgment in favor of the United States. We likewise affirm the judgment in favor of the Bank on the third party demand, for Dr. Dismuke alleged in each count of the complaint damage "in an amount equal to any judgment that may be granted plaintiff [SBA] against defendant [Dismuke]" and our first holding precludes any such damage.

I.

On September 3, 1976 the SBA authorized the Bank to make an SBA participation loan to Adel Motor Company, to be guaranteed by the SBA in the amount of 90%. One condition of the authorization was that the loan be guaranteed by Dr. James Dismuke in the amount of $50,000. The loan to Adel Motor Company was closed on September 24, 1976 after the execution of numerous documents including Dr. Dismuke's unconditional guaranty and the motor company's Deed to Secure Debt giving the Bank a security lien on five acres of land owned by the company.

The motor company subsequently defaulted on its debt. The bank conducted a foreclosure sale under the power provided in the Deed to Secure Debt, conveying the five acres of real estate to the highest bidder, the SBA, on July 5, 1977. On August 25, 1977 the Bank assigned Dr. Dismuke's guaranty to the SBA, and the government's suit to recover on the agreement followed. It is uncontested that no judicial order of confirmation and approval of the foreclosure sale, as provided by Georgia Code § 67–1503,[1] was sought. Such an order is a prerequisite to an action to obtain a deficiency judgment under Georgia law.

---

1. When any real estate is sold on foreclosure, without legal process, under powers contained in security deeds, mortgages or other lien contracts, and at such sale said real estate does not bring the amount of the debt secured by such deed, mortgage, or contract, no action may be taken to obtain a deficiency judgment unless the person instituting the foreclosure proceedings shall, within 30 days after such sale, report the sale to the judge of the superior court of the county in which the land lies for confirmation and approval, and obtains an order of confirmation and approval thereon.

## II.

Dr. Dismuke raised several defenses[2] in the district court, among them the contention that the guaranty agreement was unenforceable as a consequence of the Bank's failure to obtain judicial confirmation of the foreclosure sale in conformity with § 67–1503. The district court noted that "[t]he government, through the SBA, is not suing Dismuke on a deficiency judgment but is suing him on another wholly distinct and separate obligation, that being the guaranty agreement." *Citing Ricks v. United States,* 434 F.Supp. 1262, *aff'd mem.,* 555 F.2d 1389 (5th Cir. 1977).[3]

█ The district court's reliance on *Ricks* to remove this suit from the reach of the deficiency judgment statutory requirements is misplaced. The court in *Ricks* concluded that an SBA suit against a guarantor on her guaranty agreement did not require, as a prerequisite, that the creditor had complied with the Georgia deficiency judgment procedures at the time it foreclosed upon the mortgage securing the note guaranteed. The court reached this conclusion after the required resort to state court decisions, in which its search for guidance proved less than fruitful for its purposes. In holding that a suit against the guarantor did not

represent a suit for what can technically be termed a "deficiency judgment" within the meaning of the state protective statute, the court found no Georgia decision controlling but relied upon indications seemingly expressed in a 40-year-old decision.[4]

The Georgia Supreme Court, however, had implicitly resolved the federal district court's dilemma in *Ricks.* In *First National Bank & Trust Company v. Kunes,* 230 Ga. 888, 199 S.E.2d 776 (1973), the defendants were sued on indemnity agreements, after foreclosure on the principal debtor's property had failed to satisfy the entire liability for which their agreements made them either guarantor or surety (the characterization of their obligation was contested). Although the creditor had sought judicial confirmation under § 67–1503, it had not given notice to the defendants under § 67–1505. The court ruled that the defendants were debtors within the protective reach of the statute; the absence of notice of the confirmation immunized them from the bank's suit for a deficiency judgment founded on their separate undertakings, "irrespective of whether these . . . were agreements of surety or guaranty." 199 S.E.2d 776, 778.

---

**2.** The district court addressed each defense and found it meritless. Certain of these have not been re-urged on appeal; the remaining defenses need not be addressed by this court because of the result we reach with regard to application of the deficiency judgment statute.

**3.** The district judge also found Dismuke to be "without standing" to object to the lack of confirmation. The judge's meaning is not clear, particularly since the SBA motion for summary judgment and supporting memorandum do not urge any sort of standing argument. Apparently this portion of the ruling carried over from the disposition of the bank's motion for summary judgment; the bank had cited certain language in the guaranty agreement as precluding the guarantor from seeking the damages against the bank for its handling of the loan and foreclosure proceeding, and its argument was evidently accepted by the trial judge. We express no opinion as to the adequacy of these contractual statements to *shield the bank from indemnifying* Dismuke for any eventual liability on his agreement but consider the court's "no standing" reasoning to be neither pertinent to nor dispositive of Dr. Dis-

muke's *defense against the SBA action* on the agreement.

**4.** In *Ricks,* the court was primarily concerned with whether state or federal law controlled. The suit was to enjoin foreclosure upon a security deed (mortgage) executed by the guarantor to secure her guaranty of the principal debt. Ultimately, the court decided that, as a federal equity court, it need not enforce the Georgia deficiency judgment protection by issuing an injunction at the instance of a guarantor sued upon her independent guaranty agreement, especially since the court felt Georgia law to be inconclusive as to whether or not the proceedings would be deemed under state law to be an action to obtain a deficiency judgment for purposes of the debtor-protective statute. See 434 F.Supp. at 1268: " * * * this Court is by no means convinced that the pending foreclosure by SBA of the guarantor's security deed amounts to the exercise of rights in the nature of a deficiency judgment within the meaning of § 67–1503. No Georgia case says so. In fact, the decision of the Supreme Court in *Salter v. Bank of Commerce,* 189 Ga. 328, 6 S.E.2d 290 seems to point in the opposite direction."

The Georgia court's holding was not inhibited by the circumstance that, as here, the defendants' liability arose from separate instruments or even by the fact that those instruments created primary liability for any indebtedness of the principal "growing out of . . . default." It concluded that "it would not matter for purposes of this statute whether the debtors were primarily or secondarily liable on the debt as they would still have to be notified of the confirmation proceedings to be held accountable for the deficiency, or balance due on the indebtedness." 199 S.E.2d 776, 778. The court thus took the commonsensical view that a deficiency judgment is one for the balance due on an indebtedness and that a statute aimed at providing debtor relief (significantly first proposed in 1933 and finally enacted in 1935) did not discriminate among debtors.

On the basis of this pronouncement of the Georgia Supreme Court, we conclude that the suit before us is one for a deficiency judgment, so that recovery is barred *if* the Georgia statute is applicable—for no judicial confirmation was secured, as required by the statute, of the foreclosure sale which was conducted with allegedly inadequate compliance with statutory requirements and yielded what is alleged to be a deficient price.

### III.

A question not here reached by the district court must therefore be resolved: Is Georgia law applicable in this suit by the SBA in federal district court? More precisely, does a Georgia statute establishing a prerequisite to suit for a deficiency judgment in furtherance of a state policy of debtor protection bar the present suit by a federal agency?

We begin with the well-established principle that "federal law governs questions involving the rights of the United States arising under nationwide federal programs." *United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 99 S.Ct. 1448, 1457, 59 L.Ed.2d 711 (1979). Thus, the Georgia statute is controlling only if, under these circumstances, state law is adopted to provide the content of the federal law.

In *Kimbell Foods, supra,* the suit involved the claimed priority of contractual liens securing loans guaranteed by the Small Business Administration and the Farmer's Home Administration. The Supreme Court reversed the lower courts' decisions, which had fashioned federal common law to establish the priority of liens between the government and private lienholders. The Court held that, "absent a congressional directive, the relative priority of private liens and consensual liens arising from these Government lending programs is to be determined under nondiscriminatory state laws." 440 U.S. at 740, 99 S.Ct. at 1465.

The Court's reasoning is instructive for the present controversy. The issue was decided in the light of the following analytical framework:

Controversies directly affecting the operations of federal programs, although governed by federal law, do not inevitably require resort to uniform federal rules . . . Whether to adopt state law or to fashion a nationwide federal rule is a matter of judicial policy 'dependent upon a variety of considerations always relevant to the nature of the specific governmental interests and to the effects upon them of applying state law.'

Undoubtedly, federal programs that 'by their nature are and must be uniform in character throughout the Nation' necessitate formulation of controlling federal rules. . . . Conversely, when there is little need for a nationally uniform body of law, state law may be incorporated as the federal rule of decision. Apart from considerations of uniformity, we must also determine whether application of state law would frustrate specific objectives of the federal programs. If so, we must fashion special rules solicitous of those federal interests. Finally, our choice of law inquiry must consider the extent to which application of a federal rule would disrupt commercial relation-

ships predicated on state law. [citations and footnotes omitted] 440 U.S. at 727–729, 99 S.Ct. at 1458–59.

The Court finally struck the balance of these factors in favor of incorporation of nondiscriminatory state law as determining the relative priority between the Government's contractual liens and liens arising under state law. The court noted that adopting such law "to determine the rights of the United States as against private creditors would in no way hinder administration of the SBA and FHA loan programs." 99 S.Ct. at 1459. It was apparently influenced by the "ease with which the agencies could have protected themselves." 99 S.Ct. at 1463 n.39. Though we are concerned here with a different type of state law provision, it is clear that in this instance also state law incorporation would in no way hinder the administration of the loan program and that the statute presents no difficulty to the SBA in protecting itself.[5]

This court has already applied the *Kimbell* reasoning to an issue not resolved by that case. We were impressed that the "very detailed opinion for a unanimous Court in *Kimbell* sought to carefully instruct Government agencies that in their commercial lending activities they are subject to 'customary commercial practices,' [440] U.S. at [732], 99 S.Ct. at 1461, and should fare no better, and no worse, than a private lender." *United States v. S.K.A. Associates, Inc.*, 600 F.2d 513, 516 (5th Cir. 1979).

We conclude that adoption of the Georgia deficiency judgment statute, Ga.Code §§ 67–1503 *et seq.*, as the federal law governing the rights between Dismuke and the SBA is the proper resolution of this case and the course most consistent with the teachings of *Kimbell Foods* and *S.K.A. Associates.* Because that statute prohibits the entertaining of a suit for a deficiency judg-

ment when there has been no compliance with the requirement for judicial confirmation of the foreclosure sale, we reverse the summary judgment granted in favor of the SBA and remand for dismissal of its suit. We also affirm the grant of summary judgment in favor of the bank, since our ruling with respect to the SBA will prevent the damage for which Dr. Dismuke sought indemnification from the bank.

REVERSED IN PART AND REMANDED; AFFIRMED IN PART.

---

**5.** For instance, as a condition of its participation agreement guaranteeing repayment of 90% of the Bank's loan to the small business, the SBA may require that the Bank comply with state statutory proceedings which are prerequisite to enforcing liability (such as securing

a deficiency judgment) against those persons who provide additional security for the borrower's payment of his obligation.

* Fed.R.App.P. 34(a); 5th Cir. R. 18.