**UNITED STATES of America**

v.

**Raymond Terrell CHATHAM and Terrell, Inc., d/b/a Chatham Realty Company.**

**Civ. A. No. 75–1222.**

United States District Court,
N. D. Georgia,
Atlanta Division.

May 19, 1976.

John W. Stokes, Jr., U. S. Atty., Atlanta, Ga., Frank E. Schwelb, Chief, Housing Sec-

tion, Dept. of Justice, Susan C. Chaires, Housing Section, Civil Rights Div., Dept. of Justice, Washington, D. C., for plaintiff.

Platon P. Constantinides, Richardson, Chenggis & Constantinides, Chamblee, Ga., for defendant.

## ORDER

RICHARD C. FREEMAN, District Judge.

This is an enforcement action brought by the Government on account of defendants' alleged violations of Title VIII of the Civil Rights Act of 1968, 42 U.S.C. § 3601, *et seq. See* 42 U.S.C. § 3613. The action is presently before the court on defendant Chatham's motion to reconsider this court's order of December 23, 1975, dismissing defendant's counterclaim for damages brought pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.*, on account of defendant's failure to exhaust his administrative remedies as required by 28 U.S.C. § 2675(a). *See Bialowas v. United States*, 443 F.2d 1047 (3d Cir. 1971); *Molinar v. United States*, 515 F.2d 246 (5th Cir. 1975).

■ The gravamen of defendant's motion for reconsideration is his contention that while exhaustion of administrative remedies is ordinarily a jurisdictional prerequisite to an action under the Act, 28 U.S.C. § 2675(a) which sets forth the exhaustion requirement, further provides, in pertinent part that:

> [t]he provisions of this subsection shall not apply to such claims as may be asserted under the Federal Rules of Civil Procedure by third party complaint, cross-claim, or counterclaim.

Accordingly, defendant concludes that the exhaustion prerequisite is not a bar to the assertion of his purportedly "compulsory"

counterclaim for certain tortious conduct committed by government agents during their investigation of defendants' alleged fair housing violations. The Government, while agreeing that in some instances the exhaustion requirement may be excused, nevertheless, argues that such rule is applicable only when the counterclaim sought to be asserted against the Government is "compulsory", within the meaning of Rule 13(a), Fed.R.Civ.P.; that is, defendant's counterclaim must "arise out of the same transaction or occurrence that is the subject matter of the opposing party's claim." *See Frederick v. United States*, 386 F.2d 481 (5th Cir. 1967); *United States v. Taylor*, 342 F.Supp. 715 (D.Kansas 1972). *See also Rosario v. American Export-Isbrantsen Lines, Inc. v. United States*, 395 F.Supp. 1192 (E.D.Pa.1975). We agree with the Government's contentions in this respect and, therefore, it is incumbent upon this court to make a preliminary determination that defendant's counterclaim sought to be asserted under the Federal Tort Claims Act is, in fact, compulsory.

The nature of the claims sought to be asserted by defendant have been set forth in our earlier order in greater detail. To summarize, defendant's counterclaim is predicated upon the following theories of recovery: (1) trespass, (2) abuse of process, (3) violation of defendant's fourth amendment rights to be free from unreasonable searches and seizures, (4) slander and defamation in his trade or business, and (5) invasion of privacy.

■ At the outset, we note that irrespective of their compulsory or permissive nature, defendant's claims for slander and defamation are not maintainable, since the Federal Tort Claims Act's waiver of sovereign immunity specifically excepts claims for libel and slander. 28 U.S.C. § 2680(h).[1]

---

1. 28 U.S.C. § 2680, *as amended*, provides in relevant part:

   The provisions of this chapter and section 1346(b) of this title shall not apply to—

   .  .  .  .  .

   (h) Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights: *Provided,* That, with

regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising, on or after the date of the enactment of this proviso, out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution  .  .  .

*See generally, Gaudet v. United States,* 517 F.2d 1034 (5th Cir. 1975) (discussing the scope of liberalizing amendments effective after March 16, 1974).

█ With respect to defendant's other claims, we turn next to a determination of whether or not such claims are compulsory. As a general rule, the defendant in an action brought by the Government may assert any compulsory counterclaim that it may have, i. e., one that arises out of the same transaction or occurrence that is the subject matter of the principal action. *See generally, Frederick v. United States, supra.* 6 C. Wright & A. Miller, *Federal Practice and Procedure,* § 1427 (1971). The nature of the counterclaim as permissive or compulsory is largely dependent upon its relationship to the other party's claim. The test for such determination, suggested by Professors Wright and Miller and adopted by several federal courts, is as follows:

. . . Most courts, rather than attempting to define the key terms of Rule 13(a) [compulsory counterclaims] precisely, have preferred to suggest standards by which the compulsory or permissive nature of specific counterclaims can be determined. Four tests have been suggested:

(1) Are the issues of fact and law raised by the claim and the counterclaim largely the same?

(2) Would *res judicata* bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule?

(3) Will substantially the same evidence support or refute plaintiff's claim as well as defendant's counterclaim?

(4) Is there any logical relation between the claim and counterclaim?

6 C. Wright & A. Miller, *supra,* § 1410, at pp. 41–42. *Accord, United States v. Taylor, supra,* at 717.

█ Applying these principles to the facts herein, it is apparent that the Government's claim that defendant(s) discriminated in housing on the basis of race and natural origin are functionally dissimilar from defendant's claim that federal agents committed trespass, invaded defendant's privacy, and violated defendant's right to be free from unreasonable searches and seizures. Thus, it cannot be said that the controlling legal and factual issues are the same. Similarly, a finding that defendant either violated or did not violate the fair housing provisions would not operate as a bar to a subsequent action on defendant's trespass, privacy, and fourth amendment claims; neither would the evidence required to prove a violation of the Act, be similar to that necessary to show the excesses of federal agents in investigating alleged violations. Thus, these aspects of defendant's counterclaim are not compulsory.

On the other hand, defendant's counterclaim for what the Government has designated as "abuse of process" does appear to be more in the nature of a compulsory counterclaim, in the sense that a finding that defendant violated the fair housing provisions would be significant if not conclusive evidence that the Government had "reasonable cause" to institute the instant legal proceedings. Briefly, the allegations of the counterclaim relevant to defendant's "abuse of process" count may be summarized as follows: (1) that the Government instituted this action without "reasonable cause"; (2) that the Government had "no basis for making the determination that Defendant is engaged in a pattern or practice of discrimination"; and (3) that the Attorney General "failed to exercise due care to make a determination as to 'reasonable cause' prior to instituting" the action.

█ The availability of a cause of action under the Tort Claims Act is to be governed by appropriate definitions of state tort law. 28 U.S.C. § 1346(b) (liability of the United States determined "in accordance with the law of the place where the act or omission occurred."); *James v. United States,* 467 F.2d 832 (4th Cir. 1972). Under Georgia law, there is a fine, but nevertheless recognizable distinction between causes of action for abuse of

process,[2] malicious use of process,[3] and malicious prosecution.[4] *Carl v. Hansbury,* 67 Ga.App. 830, 833, 21 S.E.2d 302 (1942). The gravamen of defendant's counterclaim is his assertion that the instant action was commenced without a proper determination of "reasonable cause", as required by the Fair Housing Act, or in other words, that the action was brought without probable cause. Under the technical distinctions of Georgia law, such an allegation would more properly be an ingredient in a cause of action for malicious use of process or malicious prosecution, see notes 2 and 3, *supra,* since in an action for abuse of process it is unnecessary to allege want of probable cause, *Atlantic Coast Line R. Co. v. Inabinette,* 32 Ga.App. 246, 122 S.E. 902 (1924), nor is it incumbent upon the claimant to show that the previous criminal action was terminated in his favor. *I. C. & J. C. Collier, Inc. v. Buice,* 36 Ga. App. 198, 136 S.E. 287 (1927). The two major elements supporting a claim for abuse of process, existence of an ulterior purpose and an act in the use of process not proper in the regular prosecution of the proceedings are conspicuously absent from defendant's allegations herein. On the other hand, viewed either as an action for malicious prosecution or malicious use of process, which the allegations more clearly resemble, such allegations are again deficient for failure to allege the termination of the original proceeding in his favor. The Government has conceded that to some extent defendant's counterclaim for "wrongful [institution of] civil proceedings" involves factual issues logically related to those in the main action; however, it accu-

rately notes that assertion of such a counterclaim is premature since defendant cannot possibly show termination of the proceedings in his favor until after resolution of the instant action. Because our analysis of the allegations has shown they are facially deficient under Georgia law, or at the very least, premature, the court is compelled to dismiss this portion of defendant's counterclaim for failure to state a claim.

Accordingly, for the reasons hereinabove expressed, defendant's motion for reconsideration of this court's order of December 23, 1975, dismissing defendant's counterclaim under the Federal Tort Claims Act, is hereby DENIED.

IT IS SO ORDERED.

**2.** Abuse of process occurs where a plaintiff in a civil action wilfully misapplies process to obtain an object which such process is not intended by law to effect. *Simpson v. Jones,* 182 Ga. 544, 186 S.E. 558 (1936). Two essential elements are involved: (1) existence of an ulterior purpose and (2) an act in the use of the process not proper in the regular prosecution of the proceedings. *Carl v. Hansbury,* 67 Ga.App. 830, 833, 21 S.E.2d 302 (1942).

**3.** The essential elements of an action for malicious use of process are: (1) malice; (2) want of probable cause; and (3) termination of the proceeding complained of in favor of the de-

fendant before an action for damages is instituted. *Georgia Veneer & Package Co. v. Florida National Bank,* 198 Ga. 591, 32 S.E.2d 465 (1944).

**4.** The elements necessary to state a cause of action for malicious prosecution are: (1) the prosecution for a criminal offense; (2) under a valid warrant, accusation or summons; (3) that the prosecution terminated in favor of the plaintiff; (4) that it was instituted maliciously; (5) that it was instituted without probable cause; and, (6) that it damaged the plaintiff. *Ellis v. Knowles,* 90 Ga.App. 40, 81 S.E.2d 884 (1954).