**REDMAN INDUSTRIES, INC., and Redman Development Corporation, Plaintiffs,**

**v.**

**TOWER PROPERTIES, INC., Presidential Properties, Inc., and American Allegheny, Inc., formerly Thirty-Three Hundred Corporation, Defendants.**

**Civ. A. No. C79–1326.**

United States District Court, N. D. Georgia, Atlanta Division.

May 29, 1981.

146

John A. Howard and David K. Whatley, Smith, Cohen, Ringel, Kohler & Martin, Atlanta, Ga., for plaintiffs.

Edgar H. Sims, Jr. and Frank A. Lightmas, Jr., Kutak, Rock & Huie, Atlanta, Ga., for defendants.

## ORDER

ROBERT H. HALL, District Judge.

### I. *Introduction*

This case arises from a complex series of business transactions between plaintiffs (Redman), defendants, and Wachovia Real-

ty Investments (Wachovia). In February, 1975, Tower Properties, one of the defendants, purchased the Quail Creek apartment project from Redman Development Corporation for $6,800,000.00. Wachovia provided the financing. In the course of this transaction Tower executed two notes in favor of Wachovia, and Redman Development executed a note to Wachovia in the amount of $991,909.50 representing the amount by which its debt on the Quail Creek property exceeded the purchase price paid by Tower. As a condition of its financing, Wachovia required that plaintiffs guaranty one of the notes given by Tower to Wachovia in the amount of $1,300,000.00. In turn, as a condition of their guaranty, plaintiffs required that defendants indemnify plaintiffs. for any loss or expense incurred by reason of the guaranty of Tower's debt to Wachovia. The precise scope of the indemnity agreement is disputed.

On March 26, 1975, plaintiffs and Wachovia entered into a contract known as the Deficiency Debt Agreement, which consolidated all of plaintiffs' outstanding liabilities to Wachovia including the guaranty of defendants' $1,300,000.00 note associated with the Quail Creek purchase. The agreement called for plaintiffs to execute a note to Wachovia in the amount of $2,100,000.00. In exchange, Wachovia, among other things, cancelled the guaranty of Tower's note. The agreement provided that the $2,100,000.00 note executed by plaintiffs would be increased by $700,000.00 if certain events occurred. One such event was the default by Tower on the $1,300,000.00 Quail Creek note within eighteen months of the execution of the Deficiency Debt Agreement. Defendants allege that they had no knowledge of the Deficiency Debt Agreement.

Tower indeed defaulted on its Quail Creek obligations on September 17, 1976, and Wachovia foreclosed on the Quail Creek property on November 2, 1976. The default occurred within eighteen months of the execution of the Deficiency Debt Agreement and was sufficient to increase plaintiffs' obligations to Wachovia pursuant to the Deficiency Debt Agreement by $700,000.00.

Redman and Wachovia agreed among themselves that Wachovia had suffered a deficiency of at least $700,000.00 as a result of the Quail Creek foreclosure. This deficiency, however, was never confirmed or established in accordance with Georgia law.

On November 30, 1976, Wachovia conveyed Quail Creek to a party unrelated to this litigation but related to defendants. At that time, Allegheny, another of the defendants, executed a $300,000.00 note to Wachovia in satisfaction of its guaranty of Tower's note. Defendants also assert that Allegheny's $300,000.00 note exhausted the obligation under Allegheny's indemnity agreement with plaintiffs.

In 1977, plaintiffs and Wachovia negotiated an exchange arrangement in which Wachovia cancelled the $2,800,000.00 Deficiency Debt Agreement note and plaintiffs transferred certain assets to Wachovia. Defendants claim to have had no knowledge of or participation in the exchange of assets.

Plaintiffs have filed a four-count complaint against defendants in which they seek to recover $700,000.00, which represents their liability associated with the guaranty of Tower's $1,300,000.00 note to Wachovia. The first count is on the indemnity agreements and is brought against all three defendants. The second, third, and fourth counts are against Tower alone and set forth theories of subrogation, assumpsit, and suretyship respectively. Defendants have asserted several defenses against the first count and argue that the second, third, and fourth counts are inappropriate. Defendants have also filed a counterclaim with their answer, and plaintiffs have moved for summary judgment in their favor on it.

The case is now before the court on cross motions for summary judgment on the complaint and on plaintiffs' motion for summary judgment on the counterclaim. In order for defendants to defeat plaintiffs' motion for summary judgment on Count I, there must be at least one asserted defense that is either established as a matter of law or

pertinent to which there is a disputed issue of fact. Defendant Tower must similarly succeed as to the second, third, and fourth counts of the complaint. For plaintiffs to defeat defendants' motion for summary judgment on the complaint, they must establish either that none of defendants' defenses are plausible as a matter of law or that at least an issue of fact remains as to one defense that is plausible. Therefore, the court will proceed by examining each of plaintiffs' counts in relation to the legal soundness of the defenses raised by defendants in response to that count. Finally, the court will consider plaintiffs' motion on the counterclaim.

II. *Count I: The Confirmation Statute Defense*

Count I of plaintiffs' complaint arises under the indemnity agreement by which defendants indemnified plaintiffs for certain losses that plaintiffs might incur because of the Quail Creek transaction. The exact scope of the indemnity agreement is disputed, but the court need not determine that scope precisely or finally. Rather, the court turns to defendants' argument that plaintiff cannot recover against them under the indemnity because the foreclosure sale was not confirmed as required by Georgia law. Ga.Code Ann. § 67–1503.* If defendants' argument is meritorious, plaintiffs' motion for summary judgment on the indemnity count must be denied.

The statute requires that a foreclosure sale must be confirmed by a court as a prerequisite to bringing an action for a deficiency judgment against a debtor. If the foreclosure sale is not judicially confirmed within 30 days after the sale, no deficiency judgment may be had. This case, on the surface, does not appear to be in the form of a deficiency action prohibited by the Georgia confirmation statute. In the pursuit of justice, however, the court will examine the substance of this transaction and will not stop with an analysis of form. The court will carefully review this transaction and the facts surrounding it in order to determine if the cause of action stated in Count I of the complaint is, in substance, an action against plaintiffs to recover a deficiency judgment.

On one hand, the statute prohibits seeking a deficiency judgment absent confirmation of the foreclosure sale. On the other hand, a secured creditor, even if he is prohibited from seeking a deficiency judgment, may pursue any other remedies available to him. *First Federal Savings and Loan Association v. Fisher*, 422 F.Supp. 1 (N.D.Ga. 1976). In essence, the court must decide whether Count I states a cause of action for a deficiency judgment or some other remedy available to the creditor in this case. While it is true that the "statute in no way precludes a creditor from exercising other available remedies to satisfy the indebtedness," *id.* at 3, if Count I resembles a deficiency judgment in substance, plaintiffs' motion for summary judgment must be denied.

The court begins its analysis with the public policy of the confirmation statute itself. The confirmation statute was enacted at the height of the Great Depression and is intended to protect debtors. At the same time, it furthers the state policy of quieting title to land, and is to that extent useful to creditors as well.

■ "The strongest ground of public policy which occurs for the enforcement of statutes requiring confirmation in foreclosure proceedings is to protect the debtor from being subjected to double payment in cases where the property was purchased for a sum less than its market value." *Goodman v. Nadler*, 113 Ga.App. 493, 496, 148 S.E.2d 480, 483 (1966). *Accord, First Na-*

---

\* 67–1503 Confirmation Of Sales Under Powers

When any real estate is sold on foreclosure, without legal process, under powers contained in security deeds, mortgages or other lien contracts, and at such sale said real estate does not bring the amount of the debt secured by such deed, mortgage, or contract, no action may be taken to obtain a deficiency judgment unless the person instituting the foreclosure proceedings shall, within 30 days after such sale, report the sale to the judge of the superior court of the county in which the land lies for confirmation and approval, and obtains an order of confirmation and approval thereon.

*tional Bank & Trust Co. v. Kunes*, 128 Ga. App. 565, 197 S.E.2d 446, *aff'd*, 230 Ga. 888, 199 S.E.2d 776 (1973). Indeed, confirmation statutes are thought necessary to prevent inequities that arise when a creditor buys property on which it has foreclosed at a low price when property values are depressed and the economy is recessionary, and then proceeds to seek a personal judgment against the debtor for the difference between the low price the creditor has paid for the property at the foreclosure sale and the balance of the debt. Comment, 49 Tul. L.Rev. 1094 (1975). Thus, the statute is designed to protect debtors from deficiency judgments when their property has been sold at a foreclosure sale for less than its fair market value. *United States v. Gulf Club Co.*, 435 F.2d 9 (5th Cir. 1970).

In light of this public policy adopted by the Georgia General Assembly and enacted by it in section 67–1503, the court wishes to assure that the Deficiency Debt Agreement between plaintiffs and Wachovia does not operate so as to be a subterfuge of the confirmation statute and the public policy of this state. Under the Deficiency Debt Agreement involved in this case there is a danger that defendants will be subjected to double payment and that the confirmation statute will be a mere matter of form easily circumvented by clever draftsmanship and artful structuring of transactions. The court does not wish to contribute to the construction of a formal trap by which debtors may be stripped of the protection intended for them to have by the General Assembly under the confirmation statute.

"The courts consistently strike down schemes aimed at avoiding the deficiency legislation by illusory changes in form. A flimsy avoidance device based upon an intermediate surety would have no chance of success." Hetland, *Deficiency Limitations in California*, 51 Calif.L.Rev. 1, 26 (1963). *See, e. g., In re Wilton-Maxfield Management Co.*, 117 F.2d 913 (9th Cir. 1941) (purchaser transferred property securing note to dummy and became nominal guarantor apparently subject to liability under California's antideficiency statute); *Freedland v. Greco*, 45 Cal.2d 462, 289 P.2d 463 (1955)

(two notes securing the same sum construed as one); *Schwerin v. Shostak*, 213 Cal. App.2d 37, 28 Cal.Rptr. 332 (1963) (exchange of old notes for new); *Lucky Investments, Inc. v. Adams*, 183 Cal.App.2d 462, 7 Cal.Rptr. 57 (1960).

"The entire thrust of the jurisprudence in this area has been to protect the debtor from an overbearing creditor while allowing the creditor to be lenient with the debtor without losing his right to a deficiency judgment." Comment, *supra* at 1102. In our case, Wachovia foreclosed on property owned by defendant Tower Properties. The foreclosure sale allegedly left a deficiency of at least $700,000.00, but instead of confirming the foreclosure sale and seeking a deficiency judgment against Tower, Wachovia exercised its rights under the Deficiency Debt Agreement with plaintiffs and increased plaintiffs' obligation to it by $700,000.00 as provided by that agreement. Now plaintiffs seek to recover the $700,000.00 from defendants under the indemnity contract.

This set of facts presents a most troublesome possibility. It is conceivable, if the rule in Georgia were as plaintiffs would have the court hold, that a creditor could obtain the property at an unreasonably low price at a foreclosure sale, that the creditor could then obtain a deficiency from a guarantor by an agreement such as the Deficiency Debt Agreement without judicial confirmation of the sale, that the guarantor could then recover its loss from the debtor-indemnitor, and that the confirmation statute could thus be effectively circumvented. "The creditor who sells without [confirmation] under these facts would, in fact, be in a financially better position than the creditor who sells with the benefit of [confirmation]. Such a result is patently absurd and should be rejected outright by the courts." *Id.* at 1109.

The commentators have argued persuasively that guarantors such as plaintiffs should be ultimately liable for the deficiency in this case pursuant to their agreement with the creditor and should not be entitled

to the protections of the confirmation statute at all. "It is not at all unique to find a surety who is liable where he has no recourse against the principal debtor." *Hetland, supra* at 26.

▪ In Georgia, however, guarantors and sureties enjoy the protection of the confirmation statute. *First National Bank & Trust Co. v. Kunes*, 230 Ga. 888, 199·S.E.2d 776 (1973). *See also* Ga.Code Ann. § 28–101. Thus, plaintiffs were entitled to the protection of the confirmation statute and, if their bargaining position had been adequate, could have insisted upon confirmation before being liable to Wachovia for any deficiency existing after the foreclosure sale of the Quail Creek project. Plaintiffs, who had, but were not able to exercise, the protection of the confirmation statute, now argue that their contractual agreement in the Deficiency Debt Agreement together with the indemnity is sufficient to obligate defendants for the $700,000.00 deficiency agreed upon by plaintiffs and Wachovia in this case. The court does not agree.

▪ Since plaintiffs contractually agreed, for whatever reason, to guaranty the debt of defendant Tower, they should not be allowed to shift the risk of that voluntarily undertaken guaranty back on defendant so as to circumvent the confirmation statute. The case for not allowing plaintiffs to shift the burden to defendants in our case is exceptionally strong. It is uncontested in this case that plaintiffs were obligated to Wachovia for more than just their guaranty of defendant Tower's note in relationship to the Quail Creek transaction. Thus, in our case particularly, plaintiffs had ample reason to undertake the burden and risk of guaranteeing the Tower note, and Wachovia had sufficient bargaining power to force plaintiffs to enter the Deficiency Debt Agreement with the clause providing for the $700,000.00 increase in the event of Tower's default. The costs of plaintiffs' dealings with Wachovia independent of the Quail Creek project should not be borne by defendants.

▪ The interest of defendants as indemnitor lies, as does the interest of defendants as debtor, in the successful sale of the property. If plaintiffs' agreement with Wachovia were allowed to deprive defendants of the protection of the confirmation statute, defendants would be left without legal recourse and without the legal protection that they were intended by the General Assembly to have.

> The deficiency judgment is necessary for the protection of the creditor. It is just and reasonable that a debtor fully repay the creditor who bears the risk of lending him money. The reach of the deficiency judgment, however, should be circumscribed by sufficient safeguards to protect the debtor from overreaching by the creditor. If the present statutes are interpreted properly, the debtor, whether mortgagor, pledgor, or otherwise, is provided with sufficient protection. The surety likewise would be protected if the courts properly interpret the deficiency judgment statutes in accordance with the nature and purpose of suretyship.

Comment, *supra* (footnotes omitted).

▪ Analyzing the substance of the Quail Creek transaction, the court notes that Wachovia could not have proceeded against defendant Tower without confirming the foreclosure sale of the Quail Creek property. Wachovia had no incentive to confirm the sale because it could rely on the clause in the Deficiency Debt Agreement with plaintiffs. It looks in substance as if Wachovia collected an agreed-upon deficiency from plaintiff that plaintiff was willing to accept because of various other dealings with Wachovia. Defendants, who were not parties to the Deficiency Debt Agreement, should not, because of that agreement, be barred from asserting their rights under the confirmation statute.

If the suit on the indemnity agreement between plaintiffs and defendant resembles a deficiency judgment action in substance, the court must deny plaintiffs' motion for summary judgment since the initial foreclosure sale was not confirmed.

A deficiency judgment is an imposition of personal liability upon a [debtor] for an unpaid balance of a secured obligation after foreclosure ... has failed to yield the full amount of the underlying debt. Thus, a proceeding for a deficiency judgment is an attempt to recover something more than and distinct from the security provided by the debtor.

*In re Pittsburg-Duquesne Development Co.*, 482 F.2d 243, 246 (3rd Cir. 1973). The *Pittsburg-Duquesne Development Co.* case dealt with the issue of whether a mortgagee could recover rents collected by a bankruptcy trustee that should have been used to pay real estate taxes on the mortgaged property but were instead diverted to other purposes in the bankruptcy estate. The court held that the mortgagee was not seeking a deficiency judgment because it was not seeking to satisfy its claim out of the debtor's beneficial interest in other property but was instead seeking to follow and retrieve what in equity remained its security and did not become the property of the estate. By negative implication, when a secured creditor seeks to satisfy its claim from property of a debtor other than the security itself, the creditor is in substance seeking a deficiency judgment.

Other commentators and judges have defined deficiency judgment similarly to the *Pittsburg-Duquesne* court. "A deficiency judgment is a judgment rendered in favor of a creditor for the difference between the amount of the debt and the amount realized in a judicial ... sale held for the satisfaction of that debt." Comment, *supra* at 1094. A deficiency judgment is the "imposition of personal liability on mortgagor for unpaid balance of mortgage debt after foreclosure has failed to yield full amount of due debt." *Black's Law Dictionary* 379 (5th ed. 1979). *Accord, Phillips v. Union Central Life Insurance Co.*, 88 F.2d 188 (8th Cir. 1937) (deficiency judgment is understood in legal parlance to be the balance of personal indebtedness above the amount realized on sale of mortgaged property securing such indebtedness); *Mortgage Guarantee Co. v. Sampsell*, 51 Cal.App.2d 180, 124 P.2d 353 (1942) (must

be a money judgment); *Cameron Brown South, Inc. v. East Glen Oaks, Inc.*, 341 So.2d 450 (La.App.1976) (judgment in favor of a creditor for the difference between the amount derived from the judicial sale held in order to satisfy the indebtedness); *Renard v. Allen*, 237 Or. 406, 391 P.2d 777 (1964) (en banc) (the obligation for the balance remaining unpaid after applying the proceeds of the foreclosure sale is known as a deficiency judgment); *Stretch v. Murphy*, 166 Or. 439, 112 P.2d 1018 (1941) (personal judgment against a mortgagor for the mortgaged debt remaining unsatisfied out of the proceeds of sale of the mortgaged property).

The leading case on defining deficiency judgments in Georgia is *Salter v. Bank of Commerce*, 189 Ga. 328, 6 S.E.2d 290 (1939). *Salter* may be cited for the proposition that seeking recovery on a separate obligation with separate security does not constitute a deficiency judgment on another obligation. If a suit seeks to recover on a "separate, subsequent and different note for a different debt and for which a conveyance of other property was made as security," *Baker v. NEI Corp.*, 144 Ga.App. 165, 166, 41 S.E.2d 4, 5 (1977), such a suit does not seek a deficiency judgment.

■ Georgia courts have adopted the definition of deficiency judgment found in Black's Law Dictionary. *Gentry v. Hibbler-Barnes Co.*, 113 Ga.App. 1, 147 S.E.2d 31 (1966). The fact that a creditor may choose not to seek foreclosure and pursue other remedies, does not alter the fact that when the creditor does foreclose, it must confirm in order to recover a deficiency judgment.

The court has examined the case of *Ricks v. United States*, 434 F.Supp. 1262 (S.D.Ga. 1976), which is similar to the present case. To the extent that *Ricks* suggests that the action brought against the guarantor in that case was not an action for a deficiency judgment in substance, this court believes that *Ricks* misinterprets the law of Georgia. Furthermore, *Ricks* is distinguishable because it applied federal common law rather than state law. This court believes that the

choice of law in *Ricks* was correct since the United States was a party to that case. *Clearfield Trust Co. v. United States*, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943). The rule of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) governs the present case, which is here on removal because of the parties' diverse citizenship, 28 U.S.C. § 1332, and federal common law has no application. *Ricks* is therefore reduced to mere dictum for purposes of the present case.

Perhaps most instructive on Georgia's definition of *deficiency judgment* is the case of *Vaughn & Co. v. Saul*, 143 Ga.App. 74, 237 S.E.2d 622 (1977). In *Vaughn*, the Saul Trust made three loans to the Vaughns. Each loan involved a separate promissory note and was secured by a separate deed to secure debt. Each deed to secure debt applied to a different parcel of property. The Saul Trust foreclosed on one of these deeds to secure debt but did not have the foreclosure sale confirmed.

■ While the advertisement for the first foreclosure sale was running, the Saul Trust sued on one of the other notes, and the Vaughns defended by arguing that the note sued upon, which provided that it was also security for other indebtedness of the Vaughns to the Saul Trust, was in substance a suit for a deficiency judgment within the meaning of section 67–1503 and was therefore barred by the Saul Trust's failure to confirm the first foreclosure. These facts fall directly within the rule of *Salter v. Bank of Commerce*, and the *Vaughn* court held accordingly that when an instrument sued upon is not embraced by a previous foreclosure, it is not a deficiency judgment. By negative implication, when the instrument sued upon is embraced by the previous foreclosure, it is a deficiency judgment. In our case, the indemnity agreement on which plaintiffs sue was a part of the original Quail Creek transaction. It is, therefore, intimately tied to the foreclosure on Quail Creek and the court infers that it thus constitutes a deficiency judgment within the meaning of section 67–1503 under Georgia law. In order to grant summary judgment for plaintiffs in this case, the court would have to find that under Georgia law the debt on which plaintiffs sue constitutes a separate transaction not tied to the foreclosure sale so as not to be substantively a deficiency judgment for which confirmation is a prerequisite. In reality, the indemnity agreement is not at all separate from the debt necessitating foreclosure. Thus, confirmation was required and plaintiffs cannot prevail. Plaintiffs' motion for summary judgment is accordingly DENIED.

### III. *Count I: Plaintiff's Estoppel Theory*

■ The court must still consider defendants' cross-motion for summary judgment on Count I. Despite the fact that the court has found that the foreclosure sale must have been judicially confirmed before plaintiffs can recover on the indemnity agreement, plaintiffs have asserted a potentially meritorious argument that defendants are estopped to assert their confirmation argument. Whether or not the protection of the confirmation statute can be waived, the doctrine of equitable estoppel, which is essentially different from the doctrine of waiver, may be applicable in plaintiffs' favor.

As long as plaintiffs' estoppel theory is still viable, it is possible that plaintiffs could prevail and recover against defendants on Count I. Accepting *arguendo* defendants' arguments that the indemnity agreement was either not in full force or, for one reason or another, had been discharged, the estoppel theory could still provide an avenue for recovery by Redman based on the conduct of defendants. Thus, for defendants to prevail on their motion for summary judgment, they must defeat the estoppel theory as a matter of law. To do so, defendants would have to establish either that plaintiffs did not rely on their representations or conduct, or if they did, that their reliance was unreasonable.

The estoppel theory turns upon the conduct of defendants and is, therefore, fact-specific. The court has doubt as to defendants' assertion that plaintiffs did not rely

on their representations, and cannot say that plaintiffs' reliance, if there was in fact reliance, was unreasonable as a matter of law. Therefore, the court resolves its doubt against defendants, the parties seeking summary judgment. *Heyward v. Public Housing Administration*, 238 F.2d 689, 696 (5th Cir. 1956).

In conclusion, the court DENIES both motions for summary judgment as to Count I, and will proceed to an analysis of Counts II, III, and IV.

IV. *Counts II, III, and IV*

■ In Count II plaintiffs assert that Tower is liable to them based on a theory of legal and equitable subrogation. According to this theory, plaintiffs, as third parties, are subrogated to Wachovia for a claim based on a deficiency that Wachovia, as creditor, would have had against defendant Tower, as debtor. Plaintiffs argue that by subrogation they step into the shoes of Wachovia as against Tower. The court assumes without deciding that plaintiffs are indeed subrogated to Wachovia and have all the rights of Wachovia against Tower. The foreclosure sale was not judicially confirmed in compliance with section 67–1503 of the Georgia Code, however. Under the court's analysis above, Wachovia could not sue defendants for any deficiency remaining after the foreclosure sale. Plaintiffs, as Wachovia's subrogees, are subject to the same impediment and thus cannot recover on their subrogation theory. *Maryland Casualty Co. v. Brown*, 321 F.Supp. 309 (N.D.Ga.1971); *Bickerstaff v. Ellis*, 204 Ga. 734, 51 S.E.2d 821 (1949). Likewise under the court's analysis, defendants may be estopped to deny that they consented to the deficiency. The estoppel dispute turns on disputed facts. Thus, neither plaintiffs nor defendants are entitled to summary judgment on Count II. Their cross-motions for summary judgment as to it are accordingly DENIED.

■ Count III of plaintiffs' complaint sounds in assumpsit. The facts of this case are sufficiently in doubt so that the court cannot grant summary judgment in favor of defendant Tower on this count. Tower

has vigorously argued that it was not liable under the indemnity contract to plaintiffs. The court has found that, because of the failure to have the sale confirmed, Tower was not bound under the indemnity contracts. It is possible, however, that plaintiffs' failure to insist on confirmation or to confirm the sale resulted at least in part from Tower's consent to the deficiency. Under this theory, defendant Tower, though not contractually or legally bound to indemnify plaintiffs, could have accepted the benefits of plaintiff's payment of the alleged deficiency and impliedly promised to pay plaintiffs. If so, they would owe an equitable obligation to plaintiffs. This issue will turn basically on the same factual issues as will the estoppel theory discussed above. Therefore, Tower's motion for summary judgment on this count must be DENIED.

■ Nor are plaintiffs entitled to summary judgment on this count. They have the burden of persuading the court that Tower accepted the payment of the deficiency and thereby impliedly promised to reimburse plaintiffs. Ga.Code Ann. § 3–107. While there is some evidence in the record to this effect, that evidence is not conclusive and its importance to the trier of fact may well turn on other disputed facts or questions of credibility. Under these circumstances, and since doubt remains as to the facts pertinent to Count III, summary judgment in favor of plaintiffs must also be DENIED. *Heyward*, 238 F.2d at 696.

■ Count IV is founded upon suretyship. Ga.Code Ann. § 103–302. In order for the court to grant summary judgment on this count, either plaintiffs must establish that they paid a debt of defendants that was past due or defendants must establish that there was no such debt. The court cannot say conclusively that such a debt either did or did not exist. The same factual elements pertinent to resolution of the estoppel and assumpsit issues will govern this theory as well. In light of its analysis of the Georgia confirmation statute and estoppel, the court cannot say that, as a

matter of law, the $700,000.00 paid by plaintiffs was or was not a legally enforceable debt of Tower. Thus, the cross-motions for summary judgment on Count IV must be DENIED.

Having denied all motions for summary judgment pertinent to liability on plaintiffs' complaint, the court finds it unnecessary to consider questions of damages at this time.

### V. *The Counterclaim*

■ Finally, plaintiffs have moved for summary judgment on defendants' counterclaim. The first count of that counterclaim asserts a cause of action for abuse of process. Abuse of process, however, cannot be asserted by way of a counterclaim in defendants' original answer to this lawsuit. *Medoc Corp. v. Keel*, 152 Ga.App. 684, 263 S.E.2d 543 (1979). Count I of the counterclaim is thus inappropriate.

■ Similarly, Count II of the counterclaim, which states a cause of action for malicious use of process, is premature and thus inappropriate at this time. Malicious *use* of process, as distinguished from *abuse* of process, requires that the action complained of terminate in favor of the defendant therein. *United States v. Chatham*, 415 F.Supp. 1214, 1218 (N.D.Ga.1976). Thus, malicious use of process also could not be asserted as a counterclaim to the complaint that allegedly abuses the judicial process. Defendants' counterclaim is therefore not mature at this time. *Pickett v. Chamblee Construction Co.*, 124 Ga.App. 769, 186 S.E.2d 123 (1971).

■ Counts I and II of the counterclaim cannot serve as a basis for relief to defendant in this case because they are not appropriate for the court's consideration at this time. They cannot be disposed of by summary judgment, however, because summary judgment pursuant to Rule 56 is always with prejudice and should, therefore, only be granted on the merits. *Tuley v. Heyd*, 482 F.2d 590, 594 n.2 (5th Cir. 1973); *Heyward*, 238 F.2d 689; Wright & Miller, *Federal Practice and Procedure*: Civil § 2712. The court believes that Counts I and II of the counterclaim are premature and, without so deciding, believes that they could be dismissed upon a proper motion. Their faults, however, do not go to their substance, and the court will not grant summary judgment as to them. 482 F.2d 593–94. Summary judgment as to Counts I and II of the counterclaim is accordingly DENIED.

■ The factual issues essential to resolution of defendants' assertion of fraud, deceit, and misrepresentation contained in Count III of the counterclaim are unsettled. Though plaintiffs assert that no evidence exists to support the claim, the court notes that fraud involves questions of motivation and intent and finds that credibility will probably be an important factor in resolving the fraud issues. Therefore, summary judgment would be inappropriate unless some other bar exists. *Conrad v. Delta Air Lines, Inc.*, 494 F.2d 914, 918 (7th Cir. 1974).

■ Plaintiffs also assert that the fraud counterclaim is barred by the four-year statute of limitations for fraud. While this might be true were fraud not asserted by way of a counterclaim, the date for determining compliance with the applicable statute of limitations in the case of a counterclaim is the date plaintiffs filed their complaint under Georgia law. Ga.Code Ann. § 3–810. Plaintiffs filed their complaint less than four years after the earliest date on which defendants could have learned of the alleged fraud. Therefore, the statute of limitations does not require a grant of summary judgment as to defendant's fraud count.

Finally, plaintiffs argue that defendants' fraud count cannot succeed because any representations made relate to future events and thus could not be fraudulent within the meaning of Georgia law. What representations were made and to what they pertained, however, is disputed. Therefore, summary judgment cannot be granted on any of plaintiffs' theories regarding Count III of defendants' counterclaim and is accordingly DENIED. Fed.R. Civ.P. 56(c).

Because plaintiffs' statute of limitations argument is faulty as discussed above and

because disputed questions of fact remain as to defendants' warranty claim, summary judgment as to Count IV of the counter-claim, which sets forth the warranty theory, must also be DENIED. *Id.*

In conclusion, the cross-motions for summary judgment on plaintiff's complaint are each DENIED. Plaintiffs' motion for summary judgment on defendants' counter-claim is also DENIED.