In re **SPECIALTY PRODUCTS, INC.,** Debtor.

John **GLUCKLIN, et al., As the Official Creditors' Committee of Specialty Products, Inc.,** Plaintiff,

v.

**Walter L. ROSS, Lancaster Colony Corporation and Specialty Products, Inc.,** Defendants.

Bankruptcy No. 82–00192N.
Adv. No. 83–0110N.

United States Bankruptcy Court,
N.D. Georgia,
Newnan Division.

March 14, 1984.

Donald M. Sunshine, Sunshine, Slott & Sunshine, P.C., New York City, for plaintiff.

Edward O. Howard, Howard, Holland & Rhone, New York City, for Walter L. Ross.

Frank C. Dunbar, III, Murphey, Young & Smith, Columbus, Ohio, for Lancaster Colony Corp.

Wayne H. Lazarus, William K. Carmichael, Stokes, Lazarus & Watson, Atlanta, Ga., for Specialty Products, Inc.

## ORDER

W. HOMER DRAKE, Bankruptcy Judge.

The Official Creditors' Committee of Specialty Products, Inc. (hereinafter referred to

as the "Committee"), John Glucklin, et al., commenced the above-referenced adversary proceeding on June 6, 1983. Answers were timely filed by each of the above-named defendants: Specialty Products, Inc. ("Specialty Products"), the debtor herein; Lancaster Colony Corporation ("Lancaster Colony"); and Walter L. Ross ("Ross"). Ross joined a counterclaim with his July 8, 1983 answer. This matter is before the Court on the motion by the Committee to dismiss the said counterclaim.

The background of this case is as follows: On May 20, 1982, Specialty Products filed its voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code. At all times relevant to this proceeding, Ross was and is the President and sole shareholder of Specialty Products. Pursuant to Bankruptcy Code § 1102(a)(1), the Court appointed John Glucklin, et al. as members of the Committee. During the course of the bankruptcy proceeding, the assets of Specialty Products were sold to Lancaster Colony. The plan of reorganization effectuates a distribution to creditors of the proceeds from this sale. The instant adversary action challenges the propriety of certain cash payments and other monetary consideration flowing to Ross' benefit pursuant to the terms negotiated by Ross and Lancaster Colony in conjunction with the sale of assets by the debtor.

To summarize the Committees' complaint, the Committee alleges that Ross negotiated for Lancaster Colony to make certain payments and extend certain benefits to him, individually, in exchange for Ross' efforts to gain the approval of this Court for the contemplated sale of assets to Lancaster Colony. The Committee contends that, had these monies and benefits not been diverted to Ross in his individual capacity, Lancaster Colony would have increased its bid for the assets of Specialty Products by a corresponding amount. Accordingly, a higher pay-out would have been realized by the creditors of Specialty Products.

The purchase price for the assets of Specialty Products, less certain cash items and causes of action, was $5,854,000.00. This purchase price was approved by the Court on September 17, 1982. The Committee now contends that the creditors of Specialty Products would have realized approximately $7,000,000.00 absent Ross' alleged conflict of interest during sales negotiations.

The Committee argues that Ross violated his fiduciary duty to creditors as President, director and sole shareholder of Specialty Products. The specific amounts for which recovery is sought from Ross and/or Lancaster Colony include approximately $49,000.00 in pre-petition and post-petition transfers made by Specialty Products to Ross in the nature of fraudulent conveyances; $6,960.00 in automobile lease payments made by Lancaster Colony on two automobiles driven by Ross and his family; $22,884.00 constituting the pro rata portion of the annual salary paid by Lancaster Colony to Ross for the period of time from the effective date of the sale of assets until December 31, 1982; $360,000.00, representing an annual consulting fee and covenant of noncompetition in the amount of $40,000.00 per year for the years 1983–1991; and $300,000.00 approximating the amount of personal guaranties given by Ross on corporate debts for which Lancaster Colony has agreed to hold Ross harmless.

Ross' counterclaim refutes the charge that his conduct did not comport with his fiduciary duties. Ross alleges that the complaint was filed without the concurrence of either Specialty Products or the Committee. Rather, Ross maintains that the adversary action was brought by certain members of the Committee for the purpose of causing harassment to and attempted extortion from Ross and Lancaster Colony. The counterclaim seeks $2,000,000.00 in compensatory damages for harm caused to Ross' personal, professional and business reputation. In addition, Ross requests that his costs and expenses incurred in connection with responding to and defending against the complaint be borne by the Committee. Finally, the counterclaim prays that the Court disallow payment from the funds of Specialty Products any administrative claim for expenses and attorney's fees arising

from prosecution of the complaint by the Committee.

The Committee has moved under Rule 12(b)(6) of the Federal Rules of Civil Procedure, applicable to this proceeding by Bankruptcy Rule 7012, to dismiss the counterclaim for failure to state a cause of action upon which relief can be granted. A motion to dismiss may be used to test the sufficiency of a counterclaim. *Waldes Kohinoor, Inc. v. Stabile,* 140 F.Supp. 916 (S.D. N.Y.1956). The allegations in the counterclaim are to be taken as true for purposes of a motion to dismiss the counterclaim. *Walker Process Equip. v. Food Mach. & Chem. Corp.,* 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965). The Court stated in *Deloach v. Crowley's, Inc.,* 128 F.2d 378, 380 (5th Cir.1942) that:

A petition may be dismissed on motion if clearly without any merit; and this want of merit may consist in an absence of law to support a claim of the sort made, or of facts sufficient to make a good claim, or in the disclosure of some fact which will necessarily defeat the claim.

In order to facilitate a decision on the merits, pleadings are to be liberally construed. *Heyward v. Public Housing Adm.,* 238 F.2d 689 (5th Cir.1956); Fed.R.Civ.P. 8(f). The general rule for evaluating the sufficiency of a complaints was adopted by the Supreme Court in *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957):

In appraising the sufficiency of the complaint, we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

Ross' counterclaim asserts essentially two distinct claims, one in tort for abuse of process, malicious use of process or malicious prosecution; and one in contract apparently alleging a breach and claiming damages under O.C.G.A. § 13–6–11. The Court undertakes to analyze the elements of each of these theories of recovery before examining Ross' counterclaim to determine whether it is facially sufficient under the aforementioned standard governing a Rule 12(b)(6) motion to dismiss.

A relevant discussion of the various tort theories raised in Ross' counterclaim is provided in *U.S. v. Chatham,* 415 F.Supp. 1214 (N.D.Ga.1976):

Under Georgia Law, there is a fine, but nevertheless recognizable distinction between causes of action for abuse of process, malicious use of process, and malicious prosecution. *Carl v. Hansbury,* 67 Ga.App. 830, 833, 21 S.E.2d 302 (1942). The gravamen of the defendant's counterclaim is his assertion that the instant action ... was brought without probable cause. Under the technical distinctions of Georgia law, such an allegation would more properly be an ingredient in a cause of action for malicious use of process or malicious prosecution ... since in an action for abuse of process it is unnecessary to allege want of probable cause, *Atlantic Coastline R. Co. v. Inabinette,* 32 Ga.App. 246, 122 S.E. 902 (1924), nor is it incumbent upon the claimant to show that the previous criminal action was terminated in his favor. *I.C. and J.C. Collier, Inc. v. Buice,* 36 Ga.App. 198, 136 S.E. 287 (1927). The two major elements supporting a claim for abuse of process, existence of an ulterior purpose and an act in the use of process not proper in the regular prosecution of the proceedings are conspicuously absent from the defendant's allegations herein. On the other hand, viewed either as an action for malicious prosecution or malicious use of process, which the allegations more clearly resemble, such allegations are again deficient for failure to allege termination of the original proceeding in his favor. The Government accurately notes ... that assertion of such a counterclaim is premature since defendant cannot possibly show termination of the proceeding in his favor until after resolution of the instant action. Because our analysis of the allegations has shown that they are facially deficient under Georgia law, or at the very least, premature, the Court is compelled to dis-

miss this portion of the defendant's counterclaim for failure to state a claim. [footnotes omitted.]

■ Counsel for Ross, Edward O. Howard, Esquire, filed an affidavit with this Court on October 3, 1983 suggesting, at page 6, that the counterclaim is intended to state a cause of action for abuse of process. Two necessary elements for such a claim under Georgia law are: (1) existence of an ulterior purpose by the party commencing the legal action; and (2) an act in the use of process not proper in the regular prosecution of the proceeding. *Id.* Ross has alleged that the adversary proceeding was commenced by certain members of the Committee for purposes of harassment and extortion. However, Ross has not stated that an act was committed by the Committee other than to institute the adversary proceeding.

Ross cites the case of *West Georgia Pulpwood & Timber Company v. Stephens,* 128 Ga.App. 864, 198 S.E.2d 420 (1973), in support of the argument that Ross may assert abuse of process by way of a counterclaim to the suit by the Committee. In *West Georgia,* the plaintiff filed a suit for breach of contract arising out of an oral agreement for the purchase, raising and selling of hogs. The plaintiff had agreed to provide a monthly stipend to the defendant with which the defendant was to buy feeder pigs. The pigs were to be raised by the defendant, who was to receive a flat rate per pound upon the sale of the animals. In addition, the defendant was to make a commission on each ton of feed paid for by the plaintiff, with the plaintiff realizing the net profit or absorbing the loss upon sale of the animals. After making four monthly payments totaling $6,000.00, the plaintiff took an accounting from which the plaintiff determined that the defendant had breached the contract. Thereupon, the plaintiff demanded possession of the hogs purchased by defendant under the contract and also demanded return of the balance of the funds held by the defendant. Following the defendant's refusal to comply with these demands, the plaintiff sought a possessory warrant from a justice of the peace. Under the color of the possessory warrant, the plaintiff seized all the hogs on the defendant's farm, including those personally owned by the defendant.

■ The seizure by the plaintiff of pigs owned personally by the defendant constituted an act in the use of the possessory warrant which was not proper in the regular use of the possessory warrant. Accordingly, the Court in *West Georgia* held that a jury question existed as to the counterclaim for abuse of process. However, it is essential to note that the claim for abuse of process arose out of the plaintiff's action under the possessory warrant rather than under the plaintiff's commencement of an action for breach of contract. This fact makes *West Georgia* distinguishable from the case *sub judice.* The Committee has taken no legal action against Ross prior to the filing of this adversary proceeding upon which Ross may assert abuse of process by way of counterclaim. Except in the circumstance of a prior legal action giving rise to a claim for abuse of process, this Court has been cited to no cases permitting a claim for abuse of process to be raised by way of counterclaim to the plaintiff's case in chief. In *Redman Industries, Inc. v. Tower Properties, Inc.,* 517 F.Supp. 144, 154 (N.D.Ga.1981), the Court stated that a counterclaim "cannot be asserted by way of a counterclaim in defendant's original answer to this lawsuit". To the extent that Ross' counterclaim alleges abuse of process, this Court must dismiss the same for failure to state a claim upon which relief can be granted.

■ The Court reaches a similar conclusion if Ross characterizes his counterclaim as one for malicious use of process or malicious prosecution. In order to allege malicious use of process, the party raising the allegation must show termination of the legal action in his favor. *United States v. Chatham, supra; Redman Industries, Inc. v. Tower Properties, Inc., supra.* The same showing must be made under a claim for malicious prosecution. *United States v. Chatham, supra; Canal Insurance Co. v.*

*Cambron,* 240 Ga. 708 (1978), appeal dismissed, cert. denied, 439 U.S. 805, 99 S.Ct. 61, 58 L.Ed.2d 98, (1978), appl. after remand, 246 Ga. 147, 269 S.E.2d 426 (1980). Because a claim for malicious use of process or malicious prosecution is, at least, premature at this time, the Court need not address whether Ross properly pleaded special damages as required by Georgia law. *Southeast Ceramics, Inc. v. Klem,* 154 Ga. App. 149, 267 S.E.2d 7556 (Ga.Ct.App.1980), affirmed in part and reversed in part, 246 Ga. 294, 271 S.E.2d 199 (1980), affirmed 156 Ga.App. 636, 275 S.E.2d 723 (Ga.Ct.App. 1980).

With respect to Ross' claim under O.C.G.A. § 13–6–11, the Court finds this section of Georgia statutory law inapplicable to the instant proceeding. This statute pertains to damages arising from a breach of contract. Ross has not shown that the Committee has breached a contract by bringing this action or that any contract, in fact, existed between the Committee and Ross. The Court notes that the Committee spoke favorably of the terms of the sale of the assets of Specialty Products to Lancaster Colony. However, the Committee expressly reserved the right to raise its objections to the consideration paid to Ross.

Lancaster Colony submitted the best offer for the purchase of Specialty Products' assets, and the Committee wisely decided to endorse the sale with the express reservation of right to raise the objections asserted in this adversary proceeding. The course of conduct chosen by the Committee offered the most expeditious payment to creditors. The instant adversary action does not seek to change the purchase price paid by Lancaster Colony; it merely seeks to reallocate from Ross to the debtor those monies allegedly diverted due to Ross' breach of fiduciary duty. In the absence of a breach of contract by the Committee, Ross may not assert damages under O.C. G.A. § 13–6–11.

In accordance with the foregoing, the Court holds that no set of facts may exist to support Ross' counterclaim. In accordance with the foregoing, the motion to dismiss the counterclaim under Federal Rule of Civil Procedure 12(b)(6) and Bankruptcy Rule 7012 is hereby GRANTED.

IT IS SO ORDERED.